**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Jesus Manuel RIOS–FAVELA, Defendant–Appellee.**

No. 96–50128.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 7, 1997.

Decided June 25, 1997.

654

Becky S. Walker and Miriam A. Krinsky, Assistant United States Attorneys, Los Angeles, CA, for plaintiff–appellant.

Korey House, Deputy Federal Public Defender, Los Angeles, CA, for defendant–appellee.

Before: D.W. NELSON and TROTT, Circuit Judges, and BRYAN,* District Judge.

* The Honorable Robert J. Bryan, United States District Judge for the Western District of Washington, sitting by designation.

TROTT, Circuit Judge:

## I. Overview

The Government appeals Jesus Manuel Rios–Favela's ("Defendant") sentence imposed after he pled guilty to illegally reentering the United States after deportation in violation of 8 U.S.C. §§ 1326(a), (b)(1) and (b)(2). Applying section 2L1.2(b)(2) of the Sentencing Guidelines, the court adjusted the base offense level upward sixteen levels; however, it then departed downward ten levels based in part on its finding that Defendant's aggravated felony conviction was not serious enough to warrant a sixteen-level increase. We must determine whether the district court had legal authority to consider the underlying facts of Defendant's aggravated felony conviction as a basis for departure. Because we conclude that the Sentencing Commission adequately considered the nature of the underlying convictions when it formulated the section 2L1.2 guidelines and determined which prior offenses warranted a sixteen-level adjustment, we hold that the district court had no legal authority to depart based on the facts of Defendant's predicate offense.

## II. Background

In July 1995, the California Parole Office reported Defendant to the INS as an alien who had reentered the United States following felony convictions and deportation. After confirming Defendant's two prior deportations and the absence of an application for reentry, the INS arrested Defendant. The indictment alleged that prior to his deportation, Defendant had been convicted of the following offenses: sale or transportation of a controlled substance in violation of California Health and Safety Code § 11352(a)-an aggravated felony; possession of a controlled substance in violation of California Health and Safety Code § 11350(a)-a felony; and possession of a firearm by a felon in violation of California Penal Code § 12021(a)-a felony. As a result of his arrest in the instant case, Defendant pled guilty to one count of illegal

reentry in violation of sections 1326(a), 1326(b)(1), and 1326(b)(2).

The Probation Office applied section 2L1.2(b)(2) of the Sentencing Guidelines and calculated Defendant's offense level as follows: base level of eight, plus sixteen for the prior aggravated felony, minus three for acceptance of responsibility, for a total offense level of twenty-one. In addition to the three convictions alleged in the indictment, Defendant also had convictions for possession of a dangerous weapon, exhibiting a deadly weapon, felon in possession of a firearm, and obstructing or resisting a police officer. As a result of these convictions, Defendant had a criminal history category of VI. The Probation Office determined the sentencing range to be 77 to 96 months. It identified no factors warranting departure.

The Pre–Sentencing Report ("PSR") provided only minimal facts regarding Defendant's aggravated felony conviction for sale or transportation of a controlled substance: officers saw Defendant and a juvenile selling cocaine and marijuana to several people; they then made an undercover purchase of cocaine and marijuana from Defendant and the juvenile. The PSR did not report the quantity of drugs involved. For this offense, Defendant was originally sentenced to three years probation with 270 days in jail; however, his probation was subsequently revoked and he was sentenced to three years imprisonment.

Defendant requested downward departures based on: 1) his near completion of his parole term; 2) his "voluntary disclosure" of his illegal reentry by reporting to his parole officer; 3) his unique family circumstances; and 4) the possibility that he might be subjected to more severe punishment because of his immigration status. The Government opposed departure on any of these grounds, as did the Probation Office.

The Probation Office filed a Second Addendum to the PSR, drawing the court's attention to *United States v. Cuevas–Gomez,* 61 F.3d 749 (9th Cir.1995), and stating that if the court were to find that Defendant's ag-

gravated felony was comparatively minor, it could depart. The Probation Office did not recommend such a departure, however, because of the absence of information regarding the aggravated felony.

On January 29, 1996, the court held a sentencing hearing at which it invited Defendant to seek a downward departure pursuant to *Cuevas–Gomez.* Defendant's counsel argued that the aggravated felony was "relatively minor" and did not warrant the sixteen-level increase. Although counsel did not know the quantity of drugs involved, she asserted that if there had been a significant amount, the quantity would have been included in the police and probation reports. The Government opposed the departure.

The district court considered Defendant's four requested grounds of departure-near parole completion, voluntary disclosure, unique family circumstances, and immigration status-but found that none justified a downward departure. Nevertheless, it departed downward ten levels based on the minor nature of the aggravated felony and other equitable factors,[1] stating:

> [T]he Court does feel that based on *United States v. Cuevas–Gomez,* it is appropriate to depart downward. The sixteen-level adjustment is a very high and serious one, and it should definitely be supported by a serious crime, and although, of course, the crime in question does fit within the guidelines requiring the sixteen-point adjustment, the Court now is aware that it has the discretion to depart downward.…
>
> The crime was a serious one and the Court is never one to downgrade the seriousness of selling narcotics, especially as here when there's a juvenile who was allegedly involved. However, the Court does find that in this case, it would be a disproportionate punishment to aggravate the Defendant's crime by sixteen points, given the other facts that have been pointed out that are equitable factors in his favor—the fact that he was no longer engaged in that type of activity, and that he

---

1. We note that the extent to which the court relied on these equitable factors rather than the nature of the crime is questionable, particularly

in light of its denial of Defendant's request to depart based specifically on the near completion of his parole term.

was almost at the end of his parole period. These are factors that the Court does consider in his favor, and as to the crime itself, there is no showing of how much was involved, how serious it was, or the amount involved.

The resulting offense level was eleven, with a sentencing range of 27–33 months. The court imposed a sentence of 30 months imprisonment.

## III. Standard of Review

The district court's decision to depart from the guidelines is reviewed under the abuse of discretion standard. *Koon v. United States,* —— U.S. ——, ——, 116 S.Ct. 2035, 2048, 135 L.Ed.2d 392 (1996). "The abuse of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." *Id.*

## IV. Discussion

### A. Legal Authority To Depart

■ Under 18 U.S.C. § 3553(b), a court is authorized to depart from the guideline range if:

the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.

*See* USSG § 5K2.0, p.s. In *Cuevas–Gomez,* 61 F.3d at 750, we held that section 3553(b) applies to sentences calculated under section 2L1.2(b)(2). *Cuevas–Gomez,* however, is not dispositive, because it concluded only that the district court retained its general authority to consider a defendant's individual circumstances. *Id.* (citing *United States v. Estrada–Plata,* 57 F.3d 757, 763 (9th Cir.1995)). The sentencing court in that case was considering a departure based on overstatement of the defendant's criminal history level, not on the minor nature of the predicate offense. A departure based on criminal history overstatement is already authorized under sec-

tion 4A1.3 of the Sentencing Guidelines. The *Cuevas–Gomez* court simply held that, when applying section 2L1.2(b)(2), a district court is not stripped of the discretion to depart that is otherwise authorized by the Sentencing Guidelines:

The district courts have statutory authority to depart from the Guidelines in those cases in which the court finds "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." 18 U.S.C. § 3553(b); USSG § 5K2.0 (policy statement regarding departure). Nothing in section 3553(b) or in the Guidelines suggests that the district court's departure authority does not extend to USSG § 2L1.2(b)(2).

*Id. Cuevas–Gomez* does not speak to whether the Sentencing Commission adequately considered the nature of the aggravated felonies when it determined which of those offenses justified a sixteen-level adjustment; whether the Sentencing Commission did adequately consider the nature of the Defendant's predicate felony is the question we now face.[2]

The Supreme Court has said that the Sentencing Commission did not adequately take into consideration cases that are unusual or atypical, but that it carved out a heartland for each guideline. *Koon,* —— U.S. at ——, 116 S.Ct. at 2044. Defendant argues that a "simple street sale" is outside the section 2L1.2(b)(2) heartland. Though he concedes the felony is serious, he contends it does not compare with other aggravated felonies such as murder, crimes of violence, or major drug trafficking that he believes constitute the heartland of the sixteen-level adjustment. We disagree. We conclude that the Commission adequately considered the nature of the offenses it defined as aggravated felonies and thus that an alien convicted of illegal reentry who has been previously deported following "any drug trafficking crime," regardless of the quantity of drugs involved, falls within the section 2L1.2(b)(2) heartland. *See United States v. Maul–Valverde,* 10 F.3d 544, 547 (8th Cir.1993) (defendant's pattern of illegal

---

**2.** Because the Government properly preserved for appeal its objection to the court's departure, we reject Defendant's argument that the Govern-

ment waived the issue of whether the district court had legal authority to depart.

entry, conviction, deportation, and illegal reentry placed him within heartland of section 2L1.2(b) enhancement).

■ Congress enacted a statutory scheme that creates three separate offenses, with substantially different maximum sentences, for aliens who illegally reenter the United States, depending upon their criminal record. 8 U.S.C. § 1326. The maximum statutory sentence for reentering aliens with no criminal history is two years, *id.* at 1326(a), for those with a felony conviction is ten years, *id.* at 1326(b)(1), and for those with an aggravated felony conviction is twenty years. *Id.* at 1326(b)(2). As the Second Circuit recognized, "[i]n enacting 8 U.S.C. § 1326, Congress plainly intended to punish more severely those individuals who illegally reenter the country after having committed aggravated felonies than those who illegally reenter the country after having committed lesser crimes." *United States v. Amaya–Benitez,* 69 F.3d 1243, 1246 (2d Cir.1995).

The Sentencing Commission established a three-part guideline that mirrored the statutory scheme,[3] providing for upward adjustments based on criminal history: aliens with a felony conviction receive a four-level adjustment, while aliens with an aggravated felony conviction receive a sixteen-level adjustment. USSG § 2L1.2(b). In defining which aggravated felonies warranted the sixteen-level adjustment, the Sentencing Commission considered the statutory definition of "aggravated felony" provided in 8 U.S.C. § 1101(a)(43), as evidenced by its direction in note 7 to *"see"* the statute. Although at least one other circuit has held that the Sentencing Commission adopted in full the statutory definition of aggravated felony provided in 8 U.S.C. § 1101(a)(43), *see Maul–Valverde,* 10 F.3d at 545 ("Both the statute and this Guideline use the definition of aggravated felony found in 8 U.S.C

§ 1101(a)(43)."), we disagree. We conclude that the Commission formulated a nearly identical yet nonetheless distinct list of offenses that qualify as aggravated felonies for sentencing purposes. Some offenses-such as child pornography and RICO offenses, 8 U.S.C. § 1101(a)(43)(I) & (J)-are sufficient to establish the "aggravated felony" element under section 1326(b)(2), but they do not trigger the adjustment because they are not among the aggravated felonies enumerated in the section 2L1.2 definition. *See* USSG § 2L1.2, comment. (n.7). Similarly, some offenses may not count as aggravated felonies under the statute, but nonetheless trigger the adjustment. For example, in *United States v. Arzate–Nunez,* 18 F.3d 730, 736 (9th Cir.1994), the defendant claimed that only drug-trafficking offenses for which a five-year term of imprisonment was imposed constituted aggravated felonies under the statute. The court nonetheless affirmed the district court's application of section 2L1.2(b)(2) because, although the statute was ambiguous, the "nearly identical language" employed by the Guidelines unambiguously defined any drug-trafficking crime as an aggravated felony for sentencing purposes. *Id.* at 736–37. Similarly, the Seventh Circuit recently affirmed the district court's application of the sixteen-level adjustment where the defendant's conviction was not an aggravated felony under the statute but was an aggravated felony under the Guidelines. *United States v. Munoz–Cerna,* 47 F.3d 207, 212 (7th Cir. 1995). The court concluded that "the Commission did not intend that there be a symmetrical relationship between" the amended statutory definition of aggravated felony, which was applicable only to prospective offenses, and the Guideline provisions, which applied retroactively. *Id.* at 211.

In fashioning its list of aggravated felonies warranting the sixteen-level adjustment, the

---

**3.** Although the guideline mirrors the statutory scheme, we have held repeatedly that a district court must consider the specific offense characteristics of a defendant's predicate offense under USSG § 2L1.2(b) to determine the defendant's sentence. The Guideline subsections do not necessarily correspond to the statutory subsections. *See United States v. Arias–Granados,* 941 F.2d 996, 998 (9th Cir.1991) (holding that, although appellants pled guilty to section 1326(a), "the

district court was required by the clear language of the guidelines to consider the prior convictions in calculating appellants' sentences"); *United States v. Pena–Carrillo,* 46 F.3d 879 (9th Cir.1995) (holding that district court properly adjusted sentence under section 2L1.2(b)(2) of defendant who pled guilty to section 1326(b)(1)); *United States v. Moreno–Hernandez,* 48 F.3d 1112 (9th Cir.1995) (same).

Commission must have carefully considered the nature of the statutory aggravated felonies and removed those that did not warrant the upward adjustment. The Commission was undoubtedly aware of the broad range of drug-trafficking offenses contained in the statutory definition and decided that each drug-trafficking offense warranted the same sentence range, regardless of the quantity of drugs. If the Commission had thought that drug-trafficking offenses involving smaller quantities of drugs did not warrant the adjustment, it could have excluded those offenses from its guideline definition of aggravated felony. The Commission certainly knew how to frame guidelines that varied according to the amount of drugs. *See* USSG § 2D1.1; *United States v. Martinez*, 946 F.2d 100, 101–02 (9th Cir.1991) (reversing upward departure based on large quantity where Guidelines set offense level according to quantity of drugs and established same offense level for 50 kilograms "or more" of cocaine, because Sentencing Commission considered circumstances of higher quantities); *Amaya–Benitez*, 69 F.3d at 1247–48 (" '[T]he Sentencing Commission and Congress have shown themselves capable of modifying the definition of aggravated felony to exclude circumstances deemed less significant.' ") (quoting *United States v. Abreu–Cabrera*, 64 F.3d 67, 75 (2d Cir.1995)).

Because the Commission adequately considered the nature of predicate aggravated felonies warranting the sixteen-level adjustment, the district court drew an erroneous legal conclusion when it determined that it could vertically depart based on the facts of Defendant's underlying conviction. As such, the court abused its discretion.

We find support for our conclusion in decisions from the Second and Eighth Circuits. On facts similar to those in this case, the Second Circuit concluded that "a court may not look to the facts underlying a predicate conviction to justify a departure from a guideline-imposed sentence on the basis of mitigating or aggravating circumstances surrounding such conviction." *Amaya–Benitez*, 69 F.3d at 1249. The court vacated a sentence in which the district court applied the sixteen-level adjustment of section 2L1.2(b)(2) and then departed three levels based on the underlying facts of a prior aggravated felony conviction. Similarly, the Eighth Circuit held that a district court could not depart on the ground that a predicate felony was more than fifteen-years old because the Commission expressly considered this age factor. *Maul–Valverde*, 10 F.3d at 546.

Defendant argues that we have approved of departures based on the minor nature of prior offenses in the career offender context. For example, in *United States v. Lawrence*, 916 F.2d 553, 554 (9th Cir.1990), we affirmed a district court's decision to depart downward in sentencing a defendant who qualified as a career offender. The district court had relied on the Guidelines' policy statement allowing for departures when a "defendant's criminal history category significantly overrepresents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes." *Id.* (quoting USSG § 4A1.3, p.s.). *See also United States v. Reyes*, 8 F.3d 1379, 1382–83 (9th Cir.1993) (affirming downward departure from career offender status based on overrepresentation of criminal history category).

However, a horizontal departure in the career criminal context is different from the vertical departure here in a critical way: the Sentencing Guidelines specifically contemplate a departure based on overrepresentation of criminal history. USSG § 4A1.3. There is no analogue in the Guidelines for departure based on the underlying nature of a predicate offense. In departing from career offender guidelines, the court takes a defendant's entire criminal history into account. Here, the court did not evaluate the defendant's background, but determined, independent of the guidelines, what offenses are serious enough to warrant the sixteen-level departure. In so doing, it invaded the province of Congress and the Commission.

If the court had found that the nature of Defendant's prior convictions resulted in a criminal history category that overrepresented the seriousness of his history, it could have horizontally departed from that catego-

ry.[4] *See United States v. Flores–Uribe,* 106 F.3d 1485 (9th Cir.1997). To depart from the offense level, however, is to second-guess Congress's and the Commission's decisions to punish more harshly defendants found guilty of illegal reentry if they have been convicted of one of the enumerated crimes. *See* USSG § 5K2.0 (cmt.) ("[D]issatisfaction with the available sentencing range or a preference for a different sentence than that authorized by the guidelines is not an appropriate basis for a sentence outside the applicable guideline range.").

The Supreme Court has recognized that sentencing judges retain discretion "to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon,* —— U.S. at ——, 116 S.Ct. at 2053. However, the goal of the Sentencing Guidelines is to "provide uniformity, predictability, and a degree of detachment." *Id.*

At the heart of this case is a guideline that provides a substantial adjustment for a crime that some believe does not deserve such a lengthy sentence. Defendant's trial counsel noted: "In all of these cases, I've never had a Government's attorney stand up and say they actually thought somebody deserved six and [one-]half to eight years in jail for being in this country illegally. . . ." The district court stated: "The sixteen-level adjustment is a very high and serious one, and it should definitely be supported by a serious crime. . . ." Despite counsel's dissatisfaction with the sentencing range and the court's views on the requisite seriousness of the predicate offense, Congress and the Sentencing Commission did decide that some defendants convicted of illegal reentry deserve sentences in the 77–96 month range-specifically, persons like Defendant with a criminal history category VI and a prior conviction for one of the offenses, including drug trafficking, defined as an "aggravated felony." And

as the Eighth Circuit aptly points out: "A court may not depart because it considers a Guideline misguided." *Maul–Valverde,* 10 F.3d at 546.

We are mindful of the Government's concern that the floodgates would open if we authorized this departure. In illegal reentry cases where the predicate offense is a drug-trafficking conviction, the severity of the sentence would depend solely on the sentencing judge's view of how serious the underlying conduct must be-i.e., what quantity of drugs is enough-to warrant the sixteen-level adjustment. Such a result would undermine the Guidelines' goal of obtaining uniformity, predictability and detachment.

■ There is no doubt that a district court, in a section 1326 case, can consider the minor nature of the aggravated felony in the context of a defendant's entire criminal history and can horizontally depart based on overrepresentation of criminal history category. However, despite a district court's discretion to consider individual factors, its authority to depart is limited to circumstances not adequately taken into consideration by the Commission. The Commission must have realized when it included as an "aggravated felony" all drug-trafficking offenses that the broad definition included both small and large quantities. Had the Commission believed that small-quantity-drug offenses do not warrant the adjustment, it could have excluded them. Therefore, the district court abused its discretion by determining that the minor nature of Defendant's aggravated felony conviction was a permissible basis for departure.

### B. Facts Underlying Defendant's Conviction

■ Because we remand this case for resentencing, we will briefly address the district court's finding that Defendant's crime was minor.[5] This characterization may affect

---

4. Notably, the court could not have reached a guideline range including 30 months-the sentence it imposed on Defendant-solely through a departure from Defendant's criminal history category. At a base offense level of 21, the sentencing range for category VI is 77–96 months and for category I is 37–46 months.

5. The Government also asserts that the district court abused its discretion by failing to explain adequately the extent of the departure and by failing to analogize the extent of the departure to other Guidelines. Because we reverse on other grounds, we need not reach this question. How-

the question of whether the criminal history category into which Defendant falls overrepresents the seriousness of that history. A defendant bears the burden of proving mitigating factors at sentencing. *United States v. Barnes,* 993 F.2d 680, 683 (9th Cir.1993) (noting that mitigating circumstances more likely are within defendant's knowledge). Here, the PSR provided only minimal facts about the section 11352(a) conviction and did not include the quantity of drugs involved. Defendant's counsel asserted that she had looked at the probation records and the court records and that neither stated the quantity. Based on the absence of a measurement in the records, counsel speculated that "what we are talking about here is an unspecified, and very likely very negligible quantity of drugs." Speculation by Defendant's counsel is insufficient to prove the facts of the underlying drug-trafficking crime. Defendant failed to produce any reliable information to prove the quantity of drugs involved. Therefore the evidence was insufficient for *any* purpose to support the district court's finding that Defendant's conviction for sale or transportation of a controlled substance was minor in nature or involved a small amount of drugs.

## V. Conclusion

Because the district court did not have legal authority to consider the underlying facts of Defendant's aggravated felony conviction as a basis for departure, we vacate the sentence and remand for resentencing in light of this decision.

SENTENCE VACATED AND REMANDED FOR RESENTENCING.

ever, we note that we recently reconsidered our position in *United States v. Lira–Barraza,* 941 F.2d 745 (9th Cir.1991) (en banc), in which we had required a district court to explain the extent of a departure by comparison to analogous Guideline provisions. In *United States v. Sablan,* 114 F.3d 913, 919 (9th Cir.1997) (en banc), we stated: "In light of *Koon,* we now reject such a

mechanistic approach to determining whether the extent of a district court's departure was unreasonable, and hold that where, as here, a district court sets out findings justifying the magnitude of its decision to depart and extent of departure from the Guidelines, and that explanation cannot be said to be unreasonable, the sentence imposed must be affirmed."