UNITED STATES of America,
Plaintiff–Appellee,

v.

Jesus Munguia MENDOZA,
Defendant–Appellant.

No. 96–50137.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 8, 1997.

Decided Aug. 6, 1997.

Patrick R. Fitzgerald, Assistant United States Attorney, Los Angeles, CA, for Plaintiff–Appellee.

Olivia W. Karlin, Deputy Federal Public Defender, Los Angeles, CA, for the Defendant–Appellant.

Before: CANBY and THOMAS, Circuit Judges, and KING,* District Judge.

CANBY, Circuit Judge:

Jesus Munguia Mendoza appeals the sentence imposed following his plea of guilty to possession of methamphetamine with intent to distribute, a violation of 21 U.S.C. § 841(a)(1). Mendoza contends that the district court erred in concluding that it lacked legal authority under the Sentencing Guidelines to depart downward on the ground that Mendoza had no control over, or knowledge of, the purity of the methamphetamine that he delivered. We agree that, under the sentencing principles set forth in *Koon v. United States,* —— U.S. ——, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996)—a decision of which the district court did not have the benefit at the time of sentencing—the district court erred in concluding that it lacked power to depart on the ground urged by Mendoza. We ac-

---

* The Honorable Samuel P. King, United States Senior District Judge for the District of Hawaii, sitting by designation.

cordingly vacate the sentence and remand for resentencing.

## BACKGROUND

The stipulated facts of Mendoza's plea agreement provide as follows. In November 1994, Mendoza, along with co-defendant Hector Rodriguez, met with a government informant in Goleta, California, and arranged to sell him methamphetamine. Mendoza and Rodriguez drove the informant to a McDonald's restaurant in Paso Robles. Rodriguez stayed with the informant at the McDonald's while Mendoza drove to a Kentucky Fried Chicken restaurant to meet with co-defendants Noe and Jose Miranda, whose van contained 2,912.2 grams of methamphetamine. Mendoza left his car—the trunk of which contained 917.4 grams of methamphetamine—at the Kentucky Fried Chicken parking lot and took possession of Noe Miranda's van. Mendoza, Rodriguez, and the Mirandas were then arrested.

At sentencing, Mendoza's base offense level was determined by adding the amount of methamphetamine found in his car to the amount found in Noe Miranda's van. The parties stipulated in the plea agreement that the van contained 2,544 grams of actual methamphetamine and that Mendoza's car contained 804 grams of actual methamphetamine. The Guidelines require that the district court use the offense level determined by the weight of the actual methamphetamine if that offense level is higher than the offense level determined by the weight of the entire mixture. *See* U.S.S.G. § 2D1.1(c) n.(B). As a result, the presentence report calculated Mendoza's base offense level to be 38, reflecting more than 3 kilograms of actual methamphetamine. *See* U.S.S.G. § 2D1.1(c). The district court accepted that finding, but reduced Mendoza's offense three levels for acceptance of responsibility and departed downward on other grounds.

The district court declined, however, to grant Mendoza's request for a four-level downward departure on the ground that, as the middleman between the informant and the suppliers, he had no control over, or knowledge of, the purity of the methamphetamine that he delivered. A four-level depar-

ture would have lowered the base offense level to 34, which would have been applicable to 3 kilograms of methamphetamine mixture without regard to its purity. *See* U.S.S.G. § 2D1.1(c)(3). The district court concluded that it did not have legal authority under the Guidelines to depart downward on that basis, because the Sentencing Commission had taken the purity of methamphetamine into account when formulating section 2D1.1. The district court stated:

> In this case the Commission has decided that purity should be considered in deciding the amount on which the base offense level should be based, and so I think it is a factor they've considered. They've not made a distinction between those who manufacture and therefore have direct control over the purity, and those who have no control over the purity.
>
> There isn't any evidence in this case that the parties, of course, even discussed purity, so its [sic] a little bit different than the type of case where you have the parties having some discussion about the quality of the drug, the purity of the drug. No discussion takes place here, so it's hard to know how important that was to any of the players involved in the case.
>
> But the Court believes that it would be appropriate to make the adjustment in the role of the offense if, in fact, the role of the offense adjustments applied here. They don't and so the Court can't make the adjustment here.

The district court also declined the invitation of the prosecution to rule both that it had no authority to depart and, in the alternative, that if it had authority it declined to depart in the exercise of its discretion. The judge stated that "to make it clear, the Court believes that she has no discretion to depart downward on the argument counsel has made."

The district court then sentenced Mendoza to 210 months incarceration, the low end of the applicable guideline range of 210 to 265 months. The court indicated that lack of control over, or knowledge of, purity of the methamphetamine was a proper factor to consider in selecting the low end of the

Guideline range, but that the court would have sentenced the defendant to the low end anyway "so I am not here choosing the 210 because of the purity argument."

This appeal followed.

## ANALYSIS

■■■ We have jurisdiction to review the district court's conclusion that it lacked the legal authority under the Guidelines to depart downward. *United States v. Goroza,* 941 F.2d 905, 908 (9th Cir.1991). We review the district court's decision regarding departure under a unitary abuse-of-discretion standard. *Koon v. United States,* — U.S. —, — — —, 116 S.Ct. 2035, 2047–48, 135 L.Ed.2d 392 (1996).

The Sentencing Reform Act of 1984 provides that a departure from the Guidelines is appropriate when "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b). The district court concluded that it could not depart downward on the ground of lack of control over, or knowledge of, the purity of the methamphetamine because the Guidelines already took purity into account in establishing the offense level. The Supreme Court's opinion in *Koon* makes clear, however, that section 3553(b), in conjunction with the Guidelines, does not restrict the power of the district courts that severely.

> 18 U.S.C. § 3553(b) instructs a court that, in determining whether there exists an aggravating or mitigating circumstance of a kind or to a degree not adequately considered by the Commission, it should consider "only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission." The Guidelines, however, "place essentially no limit on the number of potential factors that may warrant departure." [ ] The Commission set forth factors courts may not consider under any circumstances but made clear that with those exceptions, it "does not intend to limit the kinds of factors, *whether or not mentioned anywhere else in the guidelines,* that could constitute grounds for departure in an unusual case."

*Koon,* — U.S. at —, 116 S.Ct. at 2050 (citations omitted) (emphasis added).

■ The Court thus held in *Koon* that "a federal court's examination of whether a factor can ever be an appropriate basis for departure is limited to determining whether the Commission has proscribed, *as a categorical matter,* consideration of the factor." *Id.* at 2051 (emphasis added). Those factors expressly prohibited by the Guidelines are few; they include race, sex, national origin, creed, religion, socio-economic status, § 5H1.10; lack of guidance as a youth, § 5H1.12; drug or alcohol dependence, § 5H1.4; and economic hardship, § 5K2.12. If the Commission has not categorically proscribed the factor, departure is authorized if "the factor, as occurring in the particular circumstances, takes the case outside the heartland of the applicable Guideline." *Koon,* — U.S. at —, 116 S.Ct. at 2051.

Applying the *Koon* analysis, we conclude that the district court did have legal authority under the Guidelines to consider a downward departure on the ground that Mendoza had no control over, or knowledge of, the purity of the methamphetamine that he delivered. That ground does not involve one of the few factors *categorically* proscribed by the Sentencing Commission. *See United States v. Rivera,* 994 F.2d 942, 948–49 (1st Cir.1993) (noting that the Commission only categorically proscribes departures based on race, sex, national origin, creed, religion, socioeconomic status, lack of youthful guidance, drug or alcohol abuse, and personal or business financial problems). We are not at liberty, after *Koon,* to create additional categories of factors that we deem inappropriate as grounds for departure in every circumstance. *United States v. Cubillos,* 91 F.3d 1342, 1344 (9th Cir.1996). We therefore conclude that the district court erred in ruling that the Guidelines deprived it of power to consider a downward departure on the ground asserted by Mendoza.

■■■ The question then arises whether the district court's error was harmless. A district court's error in application of the Guidelines is subject to harmless error analysis, and no remand is required if "the error

did not affect the district court's selection of the sentence imposed." *Williams v. United States,* 503 U.S. 193, 203, 112 S.Ct. 1112, 1120, 117 L.Ed.2d 341 (1992).

■ The government argues that the district court could not have departed downward in any event, for several reasons. First, the government contends that the Guidelines explicitly consider the purity of methamphetamine in establishing the offense level for Mendoza's offense. That fact is true, but does not exclude the possibility of a downward departure. Mendoza's argument that he did not have control over, or know the purity of, the methamphetamine is simply another form of the claim that a drug possessor did not know of the quantity of drugs possessed. In establishing the offense level, a defendant charged with conspiracy is held accountable for the amount of drugs possessed by coconspirators to the extent those amounts are foreseeable, and for all the drugs actually possessed by the defendant himself or herself. U.S.S.G. § 1B1.3(a)(1)(A),(B); *United States v. Mesa–Farias,* 53 F.3d 258, 260 (9th Cir.1995). Thus, a defendant who actually possesses the drugs ordinarily may be sentenced on the basis of the amount possessed, whether or not he or she knew of the amount. *See id.* There may be instances, however, where the amount of drugs that happened to be possessed differs so much from the amount reasonably foreseeable that a departure is justified because the offense level grossly overstates the culpability of the defendant's conduct. *See United States v. Ivonye,* 30 F.3d 275, 276 (2d Cir.1994).

This possibility has not escaped the attention of the Commission. In its Amendment No. 485, effective November 1, 1993, it added what is now Application Note 14 to the commentary following § 2D1.1 in the 1995 Guidelines.[1] That Note provides, in pertinent part:

> Where (A) the amount of the controlled substance for which the defendant is accountable under § 1B1.3 (Relevant Conduct) results in a base offense level greater than 36, (B) the court finds that this offense level over represents the defendant's culpability in the criminal activity, and (C) the defendant qualifies for a mitigating role adjustment under § 3B1.2 (Mitigating Role), a downward departure may be warranted. The court may depart to a sentence no lower than the guideline range that would have resulted if the defendant's Chapter Two offense level had been offense level 36. *Provided,* that a defendant is not eligible for a downward departure under this provision if the defendant:
>
> (a) has one or more prior felony convictions for a crime of violence or a controlled substance offense as defined in § 4B1.2 . . . ;
>
> \*   \*   \*   \*   \*   \*
>
> (f) sold the controlled substance or played a substantial part in negotiating the terms of the sale.

U.S.S.G. § 2D1.1, Commentary, Application Note 14. In *United States v. Pinto,* 48 F.3d 384, 388 (9th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 125, 133 L.Ed.2d 74 (1995), we said that this Note permits downward departure, subject to its stated conditions, when a defendant's own conduct or that of his coconspirators results in an offense level greater than justified by his culpability. *Id.* at 388. Note 14, however, does not appear particularly helpful to Mendoza, because the district court ruled that he was ineligible for a mitigating role adjustment, and it appears that he has prior felony convictions for controlled substance offenses and that he played a substantial part in negotiating the sale of the drugs. Indeed, the fact that the Commission has addressed the issue and specified limited exceptions might be argued to occupy the field, so controlling the district court's discretion that a remand in this case would be unnecessary. *See United States v. Lara,* 47 F.3d 60, 66 (2d Cir.1995) (leaving open question whether Note 14, then Note 16, precludes departure for those not within its terms).

---

1. The 1995 Guidelines were applied by agreement in this case. Amendment No. 485 appeared as Note 16 in the 1994 Guidelines.

Koon, however, militates against our deciding in the first instance that Mendoza's case, in light of Note 14, fails to present a "mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." 18 U.S.C. § 3553(b). If there is anything that *Koon* made clear, it is that the question whether a particular case presents such circumstances is a matter within the discretion of the district court, subject only to deferential review by an appellate court.

> Whether a given factor is present to a degree not adequately considered by the Commission, or whether a discouraged factor nonetheless justifies departure because it is present in some unusual or exceptional way, are matters determined in large part by comparison with the facts of other Guidelines cases. District courts have an institutional advantage over appellate courts in making these sorts of determinations, especially as they see so many more Guidelines cases than appellate courts do.

*Koon,* —— U.S. at ——, 116 S.Ct. at 2047; *see also United States v. Sablan,* 114 F.3d 913, 916 (9th Cir.1997) (en banc). The district court in this case expressly avoided exercising discretion to determine whether Mendoza should be granted a departure for lack of control over, or knowledge of, the purity of the methamphetamine. In light of the above language in *Koon,* we decline to exercise the discretion for the district court, or to define in advance what might constitute an abuse of that discretion. Whether application note 14 represents a consideration by the Commission of the degree and kind of circumstances presented by Mendoza's case is for the district court in its discretion to decide on remand.

▆ The same considerations lead us to decline to rule, as the government urges us to do, that Mendoza's case necessarily falls within the "heartland" of Guideline § 2D1.1 and is thus inappropriate for departure. What falls within the "heartland" of a Guideline is also within the discretion and special expertise of the district court in the first instance. *See Koon,* —— U.S. at —— - ——, 116 S.Ct. at 2046–47. Moreover, the government takes too narrow an approach to the scope of Guideline § 2D1.1 in arguing that Mendoza, as a common broker of methamphetamine who did not participate in the manufacture of the drug, presents the typical case under that Guideline. As *Koon* noted, the relevant comparison group for heartland analysis is not limited to defendants who commit the same crime as the defendant, but includes all defendants sentenced under the same Guideline as the defendant. *See Koon,* —— U.S. at —— - ——, 116 S.Ct. at 2049–50. Thus brokers in Mendoza's position might possibly constitute no more than a small subset of the total number of cases involving the "unlawful manufacturing, importing, exporting, or trafficking (including possession with intent to commit these offenses)" of a controlled substance. U.S.S.G. § 2D1.1. That question, too, is for the district court to decide in the exercise of its discretion.

We also reject the government's argument that Note 9 of the commentary following § 2D1.1 precludes departure in this case. Note 9 provides only that a district court cannot depart *upward* on the basis of unusually high purity of methamphetamine; it says nothing about whether a district court can depart *downward* on the ground that the defendant had no control over, or knowledge of, the purity of the methamphetamine that he was transporting. Indeed, the rationale behind section 2D1.1's unequal treatment of actual or "pure" methamphetamine and a mixture containing methamphetamine is that possession of "unusually pure narcotics may indicate a prominent role in the criminal enterprise and proximity to the source of the drugs." U.S.S.G. § 2D1.1, Commentary, Application Note 9; *see also United States v. Innie,* 7 F.3d 840, 847 (9th Cir.) (noting that indexing punishment to purity ensures that "a manufacturer caught with the finished product will not necessarily receive a lesser sentence than one arrested with the same amount of methamphetamine in a solution of greater total weight"), *cert. denied.,* 511 U.S. 1042, 114 S.Ct. 1567, 128 L.Ed.2d 212 (1994). That rationale may not be applicable to one who possessed methamphetamine of high purity without knowing it.

**516**

### CONCLUSION

The district court erred in concluding that it lacked power to consider a downward departure on the ground of Mendoza's lack of control over, and knowledge of, the purity of the methamphetamine he possessed for distribution. The district court expressly declined to deny departure on discretionary grounds. We therefore vacate the sentence and remand for resentencing, to permit the district court to exercise its discretion with regard to that ground of departure.

**SENTENCE VACATED; REMANDED FOR RESENTENCING.**