**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Omar CASTILLO–CASIANO,
Defendant–Appellant.**

**No. 98–50589.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 11, 1999.

Filed Dec. 28, 1999.

Mark S. Windsor, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

Melanie K. Pierson, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

Before: D.W. NELSON, REINHARDT, and TROTT, Circuit Judges.

REINHARDT, Circuit Judge:

Omar Castillo–Casiano pled guilty to one count of illegal reentry in violation of 8 U.S.C. § 1326, and now appeals his sentence. He contends that the district court erred in failing to depart downward from the sentencing guidelines range on the basis of the nature and circumstances of his underlying aggravated felony conviction. At the time of his sentencing, Ninth Circuit law precluded a departure on that basis. An intervening en banc decision of this court overturned the earlier rule, however, and held that a district court may use the nature of an underlying conviction as a basis for departure. The government asserts on appeal that because Castillo–Casiano failed to raise the issue below, the plain error standard applies. We conclude, with hindsight not available to the district judge, that the district court's failure to consider whether the nature of the underlying conviction warranted a downward departure constitutes plain error. We therefore vacate Castillo–Casiano's sentence and remand for resentencing.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Omar Castillo–Casiano was arrested and pled guilty to one count of being a deported alien found in the United States under 8 U.S.C. § 1326. In March 1998, San Diego police officers made a traffic stop of a vehicle containing three men that the officers had observed leaving a residence where suspected drug trafficking was taking place. Castillo–Casiano was a passenger in the car. He had no identification, and told the police that he had no legal status in the United States. The police officers contacted Border Patrol agents, who interviewed him and determined that he was in the United States illegally and that he had a record of prior immigration violations and criminal convictions. Castillo–Casiano eventually admitted to these facts and pled guilty to violating § 1326.

The probation officer who prepared Castillo–Casiano's pre-sentence report assigned a base offense level of eight for a violation of § 1326. The officer recommended that the offense level be increased by sixteen levels, pursuant to U.S.S.G. § 2L1.2(b)(1)(A), because Castillo–Casiano had been previously deported after a conviction for an aggravated felony—possession for sale of crack cocaine. In 1993, Castillo–Casiano had been convicted of selling $20 worth of crack cocaine, and in 1994, of selling $10 worth. The probation officer also recommended that the offense level be reduced three levels for acceptance of responsibility. This gave Castillo–Casiano a final offense level of 21.

Castillo–Casiano received a criminal history score of 12. He was assigned three points for the 1993 conviction, three points for the 1994 conviction, and three points for a 1996 conviction for being a deported alien found in the United States. He received an additional two points because he was on supervised release at the time of the instant offense, and an additional one point because he committed the instant offense less than two years after completing his term of imprisonment. With a criminal history score of 12 and an offense level of 21, Castillo–Casiano's sentencing guidelines range was 70–87 months.

Castillo–Casiano requested downward departure on three grounds: (1) over-representation of criminal history; (2) cultural assimilation to the United States; and (3) a "unique combination of factors." He did not request a departure based on the na-

ture or circumstances of the aggravated felony underlying the 16–level § 2L1.2(b)(1)(A) increase. The trial judge refused to grant the requested downward departures and sentenced Castillo–Casiano to the low end of the guideline range, 70 months in prison.

## II. LEGAL BACKGROUND

In *United States v. Rios–Favela*, 118 F.3d 653 (9th Cir.1997), decided prior to Castillo–Casiano's conviction and sentencing, the defendant pled guilty to illegal reentry in violation of 8 U.S.C. § 1326. The defendant's base offense level was increased sixteen levels because he had previously been convicted of an aggravated felony—sale or transportation of a controlled substance. *See id.* at 654. The district court departed downward ten levels, however, in part based on its finding that "the aggravated felony conviction was not serious enough to warrant a sixteen-level increase." *Id.* This court vacated the sentence, concluding that district courts lack authority to consider the nature of the underlying aggravated felony conviction as a basis for departure. *Id.* at 660. *Rios–Favela* was the controlling law in this circuit at the time of Castillo–Casiano's sentencing.

While Castillo–Casiano's appeal was pending, this court, sitting en banc, overruled *Rios–Favela* in *United States v. Sanchez–Rodriguez,* 161 F.3d 556, 558 (9th Cir.1998) (en banc). The facts of *Sanchez–Rodriguez* are remarkably similar to those in the case before us. Like Castillo–Casiano, Sanchez–Rodriguez pled guilty to reentering the United States illegally in violation of 8 U.S.C. § 1326(a). His base offense level was also eight and he too was given a sixteen-level increase because his previous deportation followed a conviction for an aggravated felony—in Sanchez–Rodriguez's case, a conviction for possession for sale of $20 worth of heroin. The district court departed downward on three bases, including the minor nature of the underlying aggravated felony conviction.

*See id.* at 558–59. The *Sanchez–Rodriguez* court affirmed, holding that district courts have the discretion to depart downward *"on any basis except for those specifically proscribed in the Sentencing Guidelines." Id.* at 560 (emphasis added). Finding that departures based on the nature of the underlying aggravated felony were not so proscribed, the court held that a "district court may depart in its discretion based on the nature or circumstances of an underlying aggravated felony." *Id.*

## III. DISCUSSION

▮▮▮ Castillo–Casiano requests that we vacate his sentence and remand so that the district court may exercise its discretion to depart downward under *Sanchez–Rodriguez.* Although *Sanchez–Rodriguez* was announced after Castillo–Casiano was sentenced, the government rightly concedes that criminal defendants may take advantage of new rules announced while their appeals are pending. *See, e.g., Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). Accordingly, as both parties agree, Castillo–Casiano is entitled to rely on the rule announced in *Sanchez–Rodriguez.* Nevertheless, the government asserts that because Castillo–Casiano did not at the time of sentencing request the downward departure in question, he must establish that the district court's failure to consider the downward departure was plain error. We agree. *See, e.g., United States v. Randall,* 162 F.3d 557, 561 (9th Cir.1998) ("Alleged sentencing errors are reviewed for plain error where the defendant has failed to object before the district court. . . ."); *United States v. Martinez–Gonzalez,* 962 F.2d 874, 877 (9th Cir.1992)(reviewing the district court's decision to depart upward for plain error where defendant did not raise objection). The plain error rule applies, even though the law foreclosed the departure in question at the time of sentencing. *See Johnson v. United States,* 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997);

*United States v. Keys*, 133 F.3d 1282 (9th Cir.1998) (en banc).

Plain error occurs where there is (1) error, (2) that is plain, and (3) the plain error affects substantial rights. *See, e.g., United States v. Olano*, 507 U.S. 725, 733–35, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Where these three conditions are met, we have discretion to correct the error, but only in cases where the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 469–70, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (internal quotations omitted). Here, the government explicitly concedes that, given the applicability of *Sanchez–Rodriguez* to Castillo–Casiano's sentencing, the first two prongs of the plain error test are satisfied: there was error, and the error was plain.[1] Given the government's concession, we need only address the third and fourth prongs of the plain error test.

In *Olano*, the Supreme Court explained the third prong of the plain error test—that the plain error affects substantial rights—in the following way:

> The third and final limitation on appellate authority ... is that the plain error "affec[t] substantial rights." This is the same language employed in [Federal Rule of Criminal Procedure] 52(a), and in most cases it means that the error must have been prejudicial: It must have affected the outcome of the district court proceedings. When the defendant has made a timely objection to an error and Rule 52(a) applies, a court of appeals normally engages in a ... so-called "harmless error" inquiry—to determine whether the error was prejudicial. Rule 52(b) normally requires the same kind of inquiry, with one important difference: It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice.

507 U.S. at 734, 113 S.Ct. 1770 (internal citations omitted). That is, in most cases, the third prong of the plain error test calls on the court of appeals to conduct a harmless error inquiry in order to determine if the error was prejudicial to the defendant.

We have held that in a sentencing case, harmless error analysis is applicable where the district court errs by failing to consider exercising its discretion. *See United States v. Mendoza*, 121 F.3d 510 (9th Cir. 1997). *Mendoza* involved an appeal from the district court's refusal to consider a downward departure on the ground that the defendant lacked control over, or knowledge of, the purity of the methamphetamine he was charged with delivering. *See id.* at 511. The district court stated that it lacked discretion to depart on that ground, but on appeal we reversed, concluding that district courts have such discretion. *See id.* at 511–12. After holding that the district court had the discretion to grant the requested departure, we conducted a harmless error analysis. *See id.* at 513–14. We held that "[a] district court's error in application of the Guidelines is subject to harmless error analysis, and no remand is required if 'the error did

---

1. Before making this concession, the government argues that the district court's decision not to depart downward is not appealable because it amounted to an exercise of discretion. *See, e.g., United States v. Morales*, 898 F.2d 99, 101–02 (9th Cir.1990). The government asserts that the district court "consider[ed] all the facts and circumstances about Castillo–Casiano that would be relevant to a decision on whether to depart downwards based on the nature of Castillo–Casiano's aggravating felonies." Although the defendant requested that the court consider the nature of the felonies underlying his *criminal history* score, there is no evidence that the court considered a departure from the 16–level increase to Castillo–Casiano's offense level on the basis of the nature or circumstances of the underlying aggravating felony. Most important, given the fact that Castillo–Casiano was sentenced before *Sanchez–Rodriguez* was decided, the district court was *barred by law* from exercising its discretion on this point. Accordingly, we reject the government's argument that the district court's decision not to depart downward from the § 2L1.2(b)(1)(A) increase constituted an exercise of discretion.

not affect the district court's selection of the sentence imposed.'" *Id.* (*quoting Williams v. United States*, 503 U.S. 193, 203, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992)). Given the *Mendoza* court's conclusion that harmless error analysis is appropriate where a district court's failure to consider exercising its discretion to depart downward is erroneous, we must apply the harmless error standard here.

Although *Mendoza* concludes that harmless error analysis is appropriate in cases such as this one, the *nature* of the harmless error review to be applied is strictly limited. According to *Mendoza*, the "special expertise" of district courts in making sentencing determinations makes it impermissible for courts of appeals "to exercise the discretion for the district court, or to define in advance what might constitute an abuse of that discretion." *Id.* at 515. Rather than attempting to determine whether the district court would have granted a departure had it been aware of its discretion to do so—that is, rather than "exercis[ing] the discretion for the district court"—in *Mendoza* we limited our harmless error inquiry to the resolution of two questions. First, we inquired whether anything in the Guidelines would have *prevented* the district court from granting the requested departure. *See id.* at 514.[2] Second, we inquired whether the particular facts surrounding the defendant's conviction and sentence "might possibly" have supported a departure. *Id.* at 515.[3] Because there was nothing in the Guidelines that foreclosed the departure Mendoza requested, and because the facts might possibly have supported such a departure, we held in *Mendoza* that it was *not* possible to conclude that the district court's erroneous

belief that it lacked discretion to depart "'did not affect the ... selection of the sentence imposed.'" *Id.* at 514 (quoting *Williams v. United States*, 503 U.S. 193, 203, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992)). Accordingly, we held that the error was not harmless, and that remand was necessary in order to allow the district court to exercise its discretion.

Here, the first part of the harmless error inquiry required under *Mendoza* has already been resolved: *Sanchez–Rodriguez* makes clear that there is nothing in the Guidelines that prevents a district court from departing downward from a § 2L1.2(b)(1)(A) increase based on the nature of the underlying aggravating felony. The only question, therefore, is whether the facts of this case "might possibly" support a district court's decision to engage in such a departure. Again, we must not "exercise the discretion for the district court": we may only determine whether the facts could possibly support such a departure. It appears clear that they could. Castillo–Casiano's sentencing increase was based on prior convictions for the possession for sale of *$10* and *$20* worth of crack cocaine. Given the range of felonies that can underlie a § 2L1.2(b)(1)(A) increase, including murder and rape, *see* 8 U.S.C. § 1101(a)(43)(A), there is no doubt that a district court "might possibly" conclude that convictions for possession for sale of $10 and $20 worth of crack do not warrant the full 16–level increase in base offense level. Indeed, the district court in *Sanchez–Rodriguez* granted its downward departure from the § 2L1.2(b)(1)(A) increase because the defendant's underlying felony

**2.** For example, the *Mendoza* court considered and rejected the government's argument that the district court was barred from granting Mendoza's requested departure because the Guidelines explicitly consider the purity of the methamphetamine in establishing the base offense level.

**3.** For example, the court concluded that defendants who lack knowledge and control over the purity of the methamphetamine in-

volved in the crime, such as Mendoza, "might possibly" constitute only a small subset of the total number of cases encompassed by U.S.S.G. § 2D1.1—the guideline under which Mendoza was sentenced. *See id.* Accordingly, the court held that Mendoza might not fall within the heartland of § 2D1.1 and that, therefore, the facts could support the requested departure.

conviction was possession for sale of $20 worth of heroin.

Under these circumstances, we cannot conclude that the district court's belief that it lacked authority to depart at the time of Castillo–Casiano's sentencing "did not affect [its] selection of the sentence imposed." *Mendoza,* 121 F.3d at 514. Accordingly, under *Mendoza,* the error was not harmless, and Castillo–Casiano has satisfied the third prong of the plain error test. *See Olano,* 507 U.S. at 734, 113 S.Ct. 1770.

Because the three prongs of the plain error test are satisfied, we will reverse and remand for resentencing if the plain error "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *Johnson,* 520 U.S. at 469–70, 117 S.Ct. 1544. On two recent occasions, we have held that sentencing errors that might have affected the defendant's sentence undermine the fairness of the sentencing proceedings. *See United States v. Garcia–Sanchez,* 189 F.3d 1143 (9th Cir. 1999); *United States v. Lawton,* 193 F.3d 1087 (9th Cir.1999). In *Lawton,* we stated: "We cannot be certain the application of the [correct guideline] and the appropriate enhancements, adjustments, and departures would have resulted in the same offense level. We conclude the erroneous upward departure affected [the defendants'] substantial rights and the fairness of the proceedings." 193 F.3d at 1095.

It is easy to see why prejudicial sentencing errors undermine the "fairness, integrity, and public reputation of judicial proceedings:" such errors impose a longer sentence than might have been imposed had the court not plainly erred. Defendants like Castillo–Casiano may be kept in jail for a number of years on account of a plain error by a court, rather than because their wrongful conduct warranted that period of incarceration. Moreover, there is little reason not to correct plain sentencing errors when doing so is so simple a task. In the context of convictions, it is the potential costs of error correction—undo-

ing a jury verdict or an entire trial, or letting a guilty defendant go free—that have led courts on occasion to decline to "notice" plain errors where the evidence of guilt was overwhelming. *See., e.g., Johnson,* 520 U.S. at 470, 117 S.Ct. 1544; *United States v. Leon–Reyes,* 177 F.3d 816, 821–22 (9th Cir.1999); *United States v. Uchimura,* 125 F.3d 1282, 1287 (9th Cir. 1997). In the sentencing context, however, these costs are not present. Reversing a sentence does not require that a defendant be released or retried, but simply allows a district court to exercise properly its authority to impose a legally appropriate sentence. Nor does reversing a sentence require a district court to revisit an issue the outcome of which is abundantly clear. Rather, it allows a sentencing court to make, for the first time, a discretionary determination necessary to arrive at an appropriate sentence. Under these circumstances, a failure to exercise our discretion in order to allow a district court to correct an obvious sentencing error that satisfies the three prongs of the plain error test would in itself undermine the "fairness, integrity, and public reputation of judicial proceedings." We therefore vacate Castillo–Casiano's sentence, and remand to the district court for the sole purpose of allowing it to exercise its discretion to depart downward under *Sanchez–Rodriguez.*

VACATED and REMANDED for further proceedings in accordance with the opinion.