**UNITED STATES of America,**

v.

**Rawle Emerson HINDS, Defendant.**

**No. 91–CR–296C.**

United States District Court,
W.D. New York.

Oct. 7, 1992.

See also 792 F.Supp. 23.

Dennis C. Vacco, U.S. Atty. (Deborah N. Sorbini, Asst. U.S. Atty., of counsel), Buffalo, N.Y., for U.S.

Thomas E. Webb, Jr., Buffalo, N.Y., for defendant.

CURTIN, District Judge.

After a jury trial, defendant Rawle Hinds was convicted of a violation of 8 U.S.C. § 1326(a). The facts produced at trial were straightforward, and the jury was justified in finding guilt beyond a reasonable doubt.

## FACTS

When Mr. Hinds presented himself on December 10, 1991, at the Peace Bridge in Buffalo, New York, to an Immigration Inspector, he claimed to be a citizen of Barbados and presented a Barbados passport in his own name. At that time, he also gave the officer a Green Card and told the officer that he was a permanent resident of the United States. That was not the case, however, because Mr. Hinds had been deported from Miami in August of 1989. An immediate check showed that his statement was not correct, and Mr. Hinds then admitted to the officer that he was the person who had been previously deported from the United States. At the time of his attempted entry, Mr. Hinds told the Immigration Officer that he had recently learned that one of his children had died, and he wanted to visit his wife.

Before trial, it became apparent to Mr. Hinds and his attorney that Mr. Hinds faced a substantial term of imprisonment, perhaps up to 96 months, if convicted. Therefore, Mr. Hinds' decision to go to trial was a practical one, although his chance of success was quite limited. Unfortunately for Mr. Hinds, the Sentencing Guidelines had been amended on November 1, 1991,

only 40 days before his attempted entry on December 10. Prior to November 1, 1991, he faced a sentence of 21 to 27 months, with possible upward departure because of his past record. Because of the changes on November 1, 1991, the increase was a substantial one.

The presentence report revealed that Rawle Hinds is 43 years of age at this time. He went to Florida when he was 21 years old. He worked as a longshoreman, and the report indicates that he was a steady and reliable worker. He was employed as a longshoreman with the Longshoremen's Association in Fort Pierce, Florida, and his supervisor said that he had no complaints about Mr. Hinds' work performance.

After an opportunity to preliminarily review the presentence report, I notified the United States Attorney that I was considering a downward departure. The United States Attorney objected to Mr. Hinds' receiving any credit for acceptance of responsibility. Under the circumstances, even though the defendant did not plead guilty, he was forthcoming about culpability soon after he met with the officer at the Bridge. In consideration of the heavy sentence Mr. Hinds faced if convicted, his decision to go to trial was a reasonable one, and he should not be penalized for that decision.

## CHANGE IN THE SENTENCING GUIDELINES

The Guidelines relating to offenses under 8 U.S.C. § 1326(a) are set forth at § 2L1.2. Prior to November 1, 1991, the base offense level was set at 8, with an increase of 4 levels if the defendant was previously convicted of a felony. On November 1, 1991, the base offense level remained unchanged, but the Guidelines were amended to provide: "If the defendant previously was deported after a conviction for an aggravated felony, increase by 16 levels." § 2L1.2(b)(2). The term "aggravated felony" is defined in paragraph 7 of the Application Notes under 2L1.2 and tracks exactly the language of 8 U.S.C. § 1101(a)(43):

"Aggravated felony," as used in subsection (b)(2), means murder; any illicit trafficking in any controlled substance (as

defined in 21 U.S.C. § 802), including any drug trafficking crime as defined in 18 U.S.C. § 924(c)(2); any illicit trafficking in any firearms or destructive devices as defined in 18 U.S.C. § 921; any offense described in 18 U.S.C. § 1956 (relating to laundering of monetary instruments); any crime of violence (as defined in 18 U.S.C. § 16, not including a purely political offense) for which the term of imprisonment imposed (regardless of any suspension of such imprisonment) is at least five years; or any attempt or conspiracy to commit any such act. The term "aggravated felony" applies to offenses described in the previous sentence whether in violation of federal or state law and also applies to offenses described in the previous sentence in violation of foreign law for which the term of imprisonment was completed within the previous 15 years. *See* 8 U.S.C. § 1101(a)(43).

The Sentencing Commission's reason for the amendment is set forth in Appendix C n. 375 to the November 1, 1991, Guideline Amendments. It provides:

> This amendment adds a specific offense characteristic providing an increase of 16 levels above the base offense level under § 2L1.2 for defendants who reenter the United States after having been deported subsequent to a conviction for an aggravated felony. Previously, such cases were addressed by a recommendation for consideration of an upward departure.... The Commission has determined that these increased offense levels are appropriate to reflect the serious nature of these offenses. In addition, this amendment revises the Commentary to § 2L1.2 to make the statutory reference more precise, and to clarify the operation of the guidelines in respect to prior criminal history. **The effective date of this amendment is November 1, 1991.**

The reason for the dramatic increase of 16 levels is explained only in the most general terms. No explanation is offered as to why the increase should be at 16 rather than at 12, or 20, or some other figure. It is true that Congress increased the sentence under this section in 1988 from a maximum term of 2 years to 5 years, and then in 1990 to a maximum term of 15 years. The Commission does not attempt to explain how this 16-level increase is tied to the Congressional amendment and why the diverse offenders described in 8 U.S.C. § 1101(a)(43) should all be treated the same.

The "aggravated felony" definition, 8 U.S.C. § 1101(a)(43), was a small part of a substantial reenactment of the Immigration laws. In the amendments, Congress addressed many problems facing the Immigration authorities. This section was only a small part of this substantial reenactment. It was the purpose of Congress to make sure that certain individuals described in this section would not be considered for admission or be permitted to remain in the United States under certain circumstances. Congress, if it desires, has the authority to provide that certain individuals should not be permitted to enter the United States if previously convicted of certain felonies. But the Congressional enactment at issue is civil in nature, and it is inappropriate to use it as part of a sentencing procedure. To apply this section to a sentencing problem will result in the inequitable treatment of offenders previously convicted of very different crimes.

In the enactment of the Immigration laws, Congress was justified in lumping the very different categories of the "aggravated felony" together. However, it is inappropriate and it makes for an unfair sentence to apply the Commission's scheme in the same manner to a person convicted of murder, which carries a possible life sentence, to one convicted of money-laundering. Perhaps the 16-level increase resulted from the Commission's concern with major drug dealers involved in large-scale cocaine or heroin distribution in the United States. Clearly, defendant Hinds fails to meet that description. To treat Mr. Hinds in such a manner is essentially unfair.

Therefore, under the circumstances of this case, I find that there is a strong argument that the 16-level increase should be disregarded. Considering Mr. Hinds' record in light of the old calculation, it would be fair to order an upward departure

at the time of sentencing. However, a 16–level departure seriously over-represents his criminal past.

## CRIMINAL HISTORY CALCULATION

Turning to the computations made to determine criminal history, further discrepancies develop. Without question, the plea of *nolo contendere* to manslaughter is serious, and there is no quarrel with the 3–level increase for that offense. But it is noteworthy that the deportation order did not immediately follow that conviction and did not occur until after Mr. Hinds subsequently was convicted on the marijuana charges. He was sentenced on the manslaughter charge on March 2, 1984, and released on February 2, 1987. He was sentenced on the marijuana charges on December 29, 1988, and released on those charges on June 7, 1989. Finally, he was deported on August 3, 1989. The record fails to reveal why the Immigration authorities delayed in the deportation proceedings.

Turning to the marijuana convictions the application of a 3–level increase for each conviction greatly overstates the seriousness of these offenses. Both convictions are felonies in Florida and, therefore, are considered "aggravated felonies" under the federal definition. However, in many jurisdictions, including New York, neither marijuana conviction would be considered a felony. One of the offenses involved the sale of 2½ grams of marijuana for $10.00, which is clearly a misdemeanor in New York. While no amount is specified in the other conviction, it was apparently a minor infraction because he was permitted to plead guilty to both counts together and was sentenced concurrently.

If an offense is a misdemeanor in one jurisdiction and a felony in another, it is simply unfair to treat one defendant in one way and another defendant in a different fashion. Furthermore, prior to November 1, 1991, the two marijuana sales which were consolidated for sentencing would have resulted in only 3 criminal history points, rather than 6. 1990 Guidelines, at 4.7, Application Note 3. The changes are described in the 1991 Manual at p. 269, Application Note 3, Related Cases. The additional language states: "Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense)." Again, the Commission in its Appendix C to the Manual of 1991 at ¶ 382 does not attempt to offer an explanation of how this change will fix disparity among sentences or how it is connected to Congressional direction. The Commission fails to set forth any reason for this substantial change.

On two occasions, the defendant was convicted of possession of small amounts of marijuana. It is not clear how much was involved. It should be observed that in New York, possession of a small amount of marijuana is a minor infraction only, but I will not reduce the criminal history category on that score. The criminal history score of 22 seriously over-represents the criminal history of the defendant, and there is a strong argument for its reduction.

## OTHER FACTORS TO BE CONSIDERED

After conviction and before sentence, I instructed the United States Attorney to provide information as to the manner in which § 1326(a) Immigration cases were referred to the United States Attorney for prosecution. My suspicion was that individuals who appeared at our entry point were treated much differently from individuals who attempted entry at the Southern border.

A local Immigration supervisor testified about the practice at the Buffalo ports of entry only. He said that in each case, where it was apparent to the officer that there may be a violation of § 1326(a), it was referred to the United States Attorney for a prosecutorial decision. The United States Attorney offered no information on how similar cases were handled outside of this area. Information could have easily been provided, but it was not. Therefore, the court will surmise that individuals are treated much differently if they attempt to enter at other borders.

Defendant was deported in 1989. He was told that if he attempted to enter the United States, he could be sentenced to a

term of up to 2 years (Government's Exhibit 1). No argument can be made that the United States is bound by this representation to the defendant, and Congress was entitled to change the law if it desired. Additionally, it is uncertain whether this had any bearing on the defendant's decision to attempt entry. Nevertheless, he was told that he faced a sentence of only two years and is now subject to a much longer term. Standing alone, this would not warrant a downward departure but should be considered, coupled with other factors, in making a determination whether a more lenient sentence should be given.

The responsibility of district courts at the time of sentencing and the authority to depart from the Sentencing Guidelines was recently reviewed in *United States v. Rogers*, 972 F.2d 489 (2d Cir.1992). The court said:

> A district court's authority to depart from the Sentencing Guidelines is statutory and is grounded in the proposition that the Guidelines do not adequately consider a certain aggravating or mitigating factor in assessing a defendant's sentencing range. See 18 U.S.C. § 3553(b) (1988).... The Guidelines themselves recognize that a "sentencing system tailored to fit every conceivable wrinkle of each case would quickly become unworkable and seriously compromise the certainty of punishment and its deterrent effect." U.S.S.G. Ch. 1., Pt. A, intro. In recognition of the necessary limitations of the Guidelines framework and of a sentencing court's statutory authority to depart from the prescribed formula, the Sentencing Commission describes the Guidelines as "carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes." Id. The Commission explains that "[w]hen a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted." Id.

The advice from the Court of Appeals applies to this case. Admittedly, the defendant was not the most upstanding citizen of South Florida. The question before the court, however, is whether the Guidelines take into consideration factors which should be considered in determining whether a downward departure is justified. I believe it is clear that the Guidelines do not do so. Therefore, a downward departure must be imposed.

## CONCLUSION

I find that the mechanical application of the scoring method seriously over-represents the nature of the offense committed by Mr. Hinds. Substantial reduction is in order. Considering all of the factors, I consider that Mr. Hinds' criminal history ranges between III and IV, and I will consider this in determining sentence. If he is sentenced under the new Guidelines, with a criminal history of 3 and an offense level of 22, the possible sentence is from 51 to 63 months. If he were sentenced under the 1990 Guidelines, with a criminal history of 4 and an offense level of 10, his sentence would range between 15 to 21 months. I believe that this intermediate point results in a fair sentence. Therefore, I will sentence the defendant to the custody of the Bureau of Prisons for a period of 33 months.

So ordered.