UNITED STATES of America,

v.

Herbert Alberto ORTEGA–MENDOZA, Defendant.

No. 97–0248–LFO.

United States District Court, District of Columbia.

Nov. 25, 1997.

John Soroka, Asst. U.S. Atty., Washington, DC, for U.S.

Teresa Alva, Asst. Federal Public Defender, Washington, DC, for Defendant.

## SENTENCING MEMORANDUM

OBERDORFER, District Judge.

On August 21, 1997, defendant Herbert Alberto Ortega–Mendoza pled guilty to a one count indictment for unlawful re-entry into the United States following a felony conviction and deportation. *See* 8 U.S.C. § 1326(a),(b)(2) (Supp.1997). Under the relevant provisions of the U.S. Sentencing Guidelines, Mr. Ortega–Mendoza's offense would ordinarily warrant a term of 57 to 71 months' imprisonment and 2 to 3 years of supervised release. Pursuant to Rule 32(c)(1) of the Federal Rules of Criminal Procedure, I make the following findings of fact and law in support of defendant's sentencing:

■ 1. Probation Officer George Neal, Jr. has observed scars on Mr. Ortega–Mendoza's chest and back that confirm the affidavit of his brother José Mendoza Osorio and defendant's own accounts that he was shot and his life was seriously threatened in El Salvador, due to his abandonment of military service and his political affiliations. There is no indication that the threat to his life has abated. This condition, which the United States does not challenge, played a significant role in Mr. Ortega–Mendoza's decision to re-enter the United States illegally. Section 5K2.12 of the U.S. Sentencing Guidelines provides, "If the defendant committed the offense because of serious coercion, blackmail, or duress, under circumstances not amounting to a complete defense, the court may decrease the sentence below the applicable guideline range.... Ordinarily coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury...." (Emphasis added). The threat to Mr. Ortega–Mendoza's life, though not a complete criminal defense, constitutes coercion and duress, a mitigating factor that supports a downward departure.

■ 2. The sixteen-point enhancement of Mr. Ortega–Mendoza's present offense level, on account of a *prior* "aggravated felony," *see* U.S.S.G. § 2L1.2(b)(2), seriously overstates his criminal history and the likelihood that he will commit further crimes. His aggravated felony conviction resulted from the attempted sale of approximately two-tenths of a gram of cocaine during a prior entry. It is a conspicuous fact that he is now charged with no illegal conduct other than the re-entry.

3. The commentary of the Sentencing Commission that pertains to the 16–point enhancement for a prior aggravated felony now reads as follows:

Aggravated felonies that trigger the adjustment from subsection (b)(1)(A) vary widely. If subsection (b)(1)(A) applies, and (A) the defendant has previously been convicted of only one felony offense; (B) such offense was not a crime of violence or firearms offense; and (C) the term of imprisonment imposed for such offense did not exceed one year, a downward departure may be warranted based on the seriousness of the aggravated felony.

U.S.S.G. § 2L1.2 commentary, applic. n. 5; *see also Stinson v. United States,* 508 U.S. 36, 38, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993) ("[C]ommentary in the Guidelines manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of

that guideline."). There is a preponderance of evidence that Mr. Ortega–Mendoza has committed only one prior felony offense, *see D.C.Code Ann. § 33–541(a)(1)* (1993); *see also N.J. Stat. Ann. § 2C:35–10(a)(4)* (West 1995); *Va.Code Ann. § 18.2–250.1(A)* (Michie 1996); *id. § 46.2–341.28; D.C.Code Ann. § 33–541(d);* that his prior felony was neither a crime of violence nor a firearms offense; and that he was imprisoned for only four months for that offense. Because his aggravated felony is far less serious than most felonies contemplated by the Sentencing Commission in creating the 16–point enhancement, a downward departure is warranted in his case.

■ 4. Section 4A1.3 of the U.S. Sentencing Guidelines provides that a downward departure may be warranted when the defendant's criminal history category significantly over-represents the seriousness of his criminal history or the likelihood that he will commit further crimes. While the magnification of Mr. Ortega–Mendoza's past offense does not fall neatly within this provision for departure for an overstated criminal history-because it is used to compute his present offense level rather than his criminal history category—such a magnification does not fit any other Guideline provision either. Indeed, it constitutes the unusual "mitigating circumstance of a kind ... not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described," U.S.S.G. § 5K2.0, and warrants a departure. *See United States v. Maul–Valverde,* 10 F.3d 544, 547 (8th Cir. 1993); *United States v. Hinds,* 803 F.Supp. 675, 677–78 (W.D.N.Y.1992), *aff'd,* 992 F.2d 321 (2d Cir.1993) (table). *But see United States v. Rios–Favela,* 118 F.3d 653 (9th Cir.1997).

■ 5. Given the significant overstatement of Mr. Ortega–Mendoza's prior "aggravated felony" for attempted distribution of two-tenths of a gram of cocaine, a downward departure to offense level 13 would halve the 16 point enhancement prescribed by U.S.S.G. § 2L1.2(b)(1)(a). The offense level so adjusted would more adequately represent his criminal history, the relative likelihood that

he will commit further crimes, and the seriousness of his past aggravated felony. This adjustment of offense level and his category IV criminal history yields a term of imprisonment of 24 to 30 months.

6. Mr. Ortega–Mendoza's entire family lives in the United States, and several members were present at a pre-sentencing hearing on November 13, 1997. It is represented without contradiction that they are leading lawful and useful lives and would offer defendant a strong support network were he to be released into the community.

7. It is reasonably estimated by the United States that it would cost approximately $35,000 annually to maintain Mr. Ortega–Mendoza in a federal penitentiary. A reduction in his sentence by 27 months will save the United States approximately $78,750.

■ 8. If Mr. Ortega–Mendoza were to serve the minimum sentence provided by the U.S. Sentencing Guidelines, as a deportable alien he would be ineligible for more lenient confinement during the last 10% of his sentence, designed to provide "a reasonable opportunity to adjust to and prepare for [his] re-entry into the community," 18 U.S.C. § 3624(c) (Supp.1997), and for assignment to a minimum security facility. Such a prospect of "objectively more severe conditions" for defendant, solely due to his status as a deportable alien, warrants a downward departure under U.S.S.G. § 5K2.0. *See United States v. Smith,* 27 F.3d 649, 650 (D.C.Cir. 1994).

9. Mr. Ortega–Mendoza has an ongoing history of drug abuse. It appears that his criminal conduct is inextricably linked to this history. To treat his drug habit and thereby materially reduce the risk of future criminality, it is assumed that the Bureau of Prisons will make drug treatment available to him and that he will take advantage of such treatment.

In light of these departure provisions and the findings of fact and law, I have departed downward from the sentence prescribed by the Sentencing Guidelines and sentenced Mr. Ortega–Mendoza to a term of 30 months' imprisonment, approximately six months having been already served, and a subse-

quent term of three years' supervised release.