# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 28, 2009

Charles R. Fulbruge III
Clerk

No. 08-10777
Summary Calendar

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

ROBERT DANIEL ARGUETA-LOPEZ

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:08-CR-25-ALL

Before GARWOOD, JOLLY and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Robert Daniel Argueta-Lopez (Argueta) appeals the sentence imposed in July 2008 following his guilty plea conviction for being unlawfully present in the United States following removal. The district court sentenced Argueta to 57 months of imprisonment and two years of supervised release, the lowest sentence within the guidelines sentence range.

Argueta argues that the sentence was substantively unreasonable because he illegally returned to the United States because gang members in El Salvador

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

threatened to kill him. He contends that the district court's consideration of his mitigation allegations in determining a within-guidelines sentence was an implicit determination that his allegations were credible. He maintains that the mitigating factors were so strong that a sentence within the guidelines range was unreasonable because U.S.S.G. § 5K2.12 encourages a downward departure when a defendant has been subjected to coercion or duress. Argueta acknowledges the presumption of reasonableness afforded on appeal to sentences within the guidelines sentence range, but he argues that the presumption has been rebutted in this case because the district court did not give sufficient weight to the death threats that led him to return to the United States and because the sentence was a clear error of judgment in balancing sentencing factors.

While Argueta moved for a downward departure or variance,[1] he did not object to the sentence as unreasonable. Thus, as Argueta concedes, his challenge to the reasonableness of his sentence may be subject to plain error review. *See United States v. Peltier*, 505 F.3d 389, 391-92 (5th Cir. 2007), *cert. denied*, 128 S. Ct. 2959 (2008). We need not determine, however, whether plain error review is appropriate in this case because Argueta is not entitled to relief even assuming that he preserved the reasonableness issue for review. *See United States v. Rodriguez*, 523 F.3d 519, 525 (5th Cir.), *cert. denied*, 129 S. Ct. 624 (2008).

Argueta acknowledges that the sentence was within the properly calculated guidelines range. Therefore, on appeal the sentence is rebuttably presumed to be reasonable. *See Rita v. United States*, 127 S.Ct. 2456, 2462-67 (2007). Assuming arguendo that the district court found Argueta's allegations

---

[1]Argueta expressly disclaims seeking review of the district court's failure to grant a downward departure under the sentencing guidelines, stating in his reply brief in this court that "The issue in this appeal is not, as the government erroneously interprets the Initial Brief, whether 'the district court erred in not departing downward in accordance with U.S.S.G. § 5K2.12.'"

of duress credible, the allegations arguably set forth a mitigating factor. *See, e.g., United States v. Ortega-Mendoza*, 981 F. Supp. 694, 695 (D.D.C. 1997). Argueta's record of violent criminal activity that included a conviction for murder, however, was an aggravating factor. *Cf. United States v. Smith*, 440 F.3d 704, 708-10 (5th Cir. 2006) (upholding upward deviation based upon defendant's criminal record).

The PSR, which issued June 2, 2008, specifically noted that Argueta stayed in El Salvador three days after being deported there in December 2007 before deciding to return to the United States, that he "indicated the MS-13 criminal street gang in El Salvador threatened to kill him twice and he feared for his life . . . in addition to fearing for his life, the defendant indicated he returned to the United States because he has no family in the (sic) El Salvador, as his wife and children reside in Fort Worth."

The PSR indicated that among Argueta's previous convictions were a 1992 felony conviction for possession of a prohibited weapon and a December 1994 conviction for murder for which Argueta was sentenced to fifteen years' imprisonment (from which he was released in November 2007 for time served). The PSR also noted that in connection with Argueta's 1994 guilty plea to murder, two other murder charges, and two illegally carrying arms charges, against him were dismissed as part of the plea bargain.

The PSR calculated the guidelines sentencing range as 57 to 71 months (and two or three years' supervised release).[2]

The PSR noted that a departure under U.S.S.G. § 4A1.3(a)(1) could reasonably be applied, stating:

> "The defendant has one murder conviction and there is reliable information (from an eye witness) which indicates he was involved in *at least one other* murder (paragraph 35). There is also reliable information which indicates on two separate occasions, the

---

[2]The statutory maximum imprisonment was 20 years. 8 U.S.C. § 1336(a) & (b)(2).

defendant committed the offense of Unlawful Carrying a Weapon (paragraphs 32 and 33). The violent and gun-related offenses for which the defendant has been arrested as well as the number of arrests he has, indicates the defendant has a disregard for the law and there is a likelihood that he will commit future crimes. It would not be unreasonable for the court to conclude that the defendant's Criminal History Category under-represents the seriousness of his past criminal conduct *or* the likelihood that he will commit future crimes." (initial emphasis added)

On June 3, 2008, the government filed a statement that it had no objection to the PSR and adopted it; it also stated that it opposed any downward departure or non-guidelines sentence. On June 12, the defendant through counsel filed his written "notice of no objection to presentence report."

On June 26, 2008 defendant, through counsel, filed his motion requesting that the court "department downward from the guideline range determined by the Presentence Report or, in the alternative, to vary from such sentence." The substance of the motion was that defendant left El Salvador and could not safely remain there because of the threats to his life made there by members of the MS13 gang within the first three days of his arrival there pursuant to his December 13, 2007 deportation. The motion was supported by various exhibits, principally a copy of an April 10, 2008 motion to reopen the earlier immigration proceedings and to seek from the relevant immigration authorities asylum, withholding of removal and relief under the Convention Against Torture Act filed by defendant's immigration counsel and diverse supporting documents, including an April 7, 2008 sworn statement of defendant. The defendant's motion in the court below requested "a sentence substantially lower than that recommended under the guideline calculation of the Presentence Report," but otherwise did not indicate any specific desired range. It cited, *inter alia*, U.S.S. G. §§ 5K2.11 and 5K2.12 and *United States v. Ortega,* 981 F. Supp. 694 (D. D.C. 1997).

On July 1, 2008, the government filed its opposition to Argueta's motion, asserting that he should be granted neither a downward departure nor a variance.

The sentencing hearing was held July 25, 2008. No sworn testimony nor any other evidence was presented at the hearing. The district court initially ascertained that defense counsel and the defendant personally had each read the PSR and discussed it with each other, and that there were no objections to the PSR. The court then generally adopted the factual findings and the conclusions set forth in the PSR, and also further specifically found (all as stated in the PSR), that the guidelines offense level was 21, criminal history category IV, imprisonment range 57 to 71 months, and supervised release two or three years. The court then asked defense counsel if he had anything to present in support of his motion for downward departure or, in the alternative, for sentencing variance, and counsel said he had nothing other than "the content of the motion." The court then observed "okay. Well I don't think this is a case that there should be a sentencing departure or sentencing variance, but I'm going to take into account in determining what sentence to impose the arguments that you make and the information you provided in the motion."

The court invited defense counsel to make a statement on behalf of his client. Counsel then briefly said he would simply "reiterate much of what's contained in the motion," that when deported defendant had been gone so long he really didn't have much connection to El Salvador any longer, that he feared for his life from the street gangs there and "that is what motivated his return to the United States," and that he had never previously been in court on "an immigration offense." He requested the court "to sentence as leniently as possible given these circumstances."

The defendant then personally gave a brief (some nine transcript lines) unsworn statement, apologizing for his offense, stating he 'didn't have no choice but to come in like that to ask for political asylum here," that he wanted to "get

a legal status to be able to stay with" his family, and requested leniency. His counsel then stated that immigration counsel had advised that "there is some legal possibility and factual possibility for relief" for Argueta in immigration proceedings.

The court then sentence the defendant to 57 months' imprisonment to be followed by two years' supervised release, and stated "I've taken into account all of the factors the Court should consider under 18 United States Code, Section 3553(a), in determining what sentence to impose, and I've concluded that the sentence I have imposed is a reasonable sentence that adequately and appropriately considers all of those factors."

The district court had before it both mitigating and aggravating factors. The district court implicitly balanced these factors and determined that a sentence at the low end of the guidelines range was appropriate. Considering the totality of the circumstances, as we must, *see Gall v. United States*, 128 S. Ct. 586, 597 (2007), Argueta has not shown that the sentence was an abuse of the district court's discretion. *See Rita*, 127 S. Ct. at 2470. "The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall*, 128 S.Ct. at 597.

AFFIRMED.