**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Gary William MINORE, aka Skip,**
**Defendant–Appellant.**

**United States of America,**
**Plaintiff–Appellee,**

v.

**Arthur Torsone, Defendant–Appellant.**

**United States of America,**
**Plaintiff–Appellee,**

v.

**Prommateta Chinawat, Defendant–Appellant.**

**Nos. 99–30381, 00–30025 and 00–30052.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 6, 2000.

Filed June 17, 2002.

---

Lee Covell and Kenneth E. Kanev, Seattle, WA, for defendant-appellant Gary W. Minore.

Scott A. Schumacher, Chicoine & Hallett, Seattle, WA, for defendant-appellant Arthur Torsone.

Jennifer Shaw, Aoki & Sakamoto, Seattle, WA, for defendant-appellant Prommateta Chinawat.

Annette L. Hayes, Assistant United States Attorney, Seattle, WA, for plaintiff-appellee United States of America.

Before: B. FLETCHER and FISHER, Circuit Judges, and SCHWARZER,* Senior District Judge.

FISHER, Circuit Judge.

In this appeal, we consider the significance of *Apprendi v. New Jersey,* 530 U.S.

* The Honorable William W Schwarzer, Senior    United States District Judge for the Northern

466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), in a realm other than sentencing. Gary W. Minore challenges the validity of his conviction because the district court did not advise him during the plea colloquy that the government would be required to prove the amount of marijuana involved in the offense to the jury beyond a reasonable doubt. Applying *Apprendi* in the context of Federal Rule of Criminal Procedure 11(c)(1), we hold that before accepting a guilty plea, the district court must advise the defendant that the government would have to prove to the jury beyond a reasonable doubt any quantity of drugs that would expose the defendant to a higher statutory maximum sentence.[1] Applying plain error review to the district court's failure to so advise Minore, we conclude the error did not seriously affect the fairness, integrity or public reputation of the judicial proceedings, and we thus affirm Minore's conviction. We also affirm the sentence of Minore's co-defendant, Prommetata Chinawat, in spite of a separate *Apprendi* error relating to Chinawat's sentencing.

### Factual Background

Minore and Chinawat were arrested for their involvement in a conspiracy to import at least three shipments of marijuana from Southeast Asia to the United States. In late 1997, the members of the conspiracy used a fishing boat, the OK Tedi, to transport approximately 12,500 pounds (5670 kilograms) of marijuana from Thailand and Cambodia to waters off the coast of Washington state. While in United States cus-

toms waters, the Coast Guard intercepted the OK Tedi; in response, the crew set it on fire and it sank. Law enforcement officers recovered approximately 5200 pounds (2363 kilograms) of marijuana from the water over the next two days. In June 1998, members of the conspiracy unsuccessfully attempted to obtain a second load of about 7000 pounds (3175 kilograms) of marijuana to import into the United States. However, three members of the conspiracy, including Chinawat, were arrested by Cambodian law enforcement officials on their way to the pick-up site. Chinawat was held in Cambodia for six months and then transferred to the United States in December 1998. In the meantime, in August 1998, members of the conspiracy attempted to obtain a third load of about 6300 pounds (2858 kilograms) of marijuana, this time from sources in Seattle, Washington. As Chinawat was in custody, he was not involved in the third transaction, which turned out to be a reverse sting operation. Minore, one of the financiers of the conspiracy, was involved in the third transaction (as well as the first two) and was arrested when he delivered a $25,000 payment to one of the government's confidential informants.

### I.

### Minore

In June 1999, Minore pled guilty to money laundering, in violation of 18 U.S.C. §§ 1956(a)(1) and 1956(a)(1)(A)(i), and conspiracy to import and distribute marijuana, in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(A), 846, 952(a), 960(a)(1), 960(b)(1)(G) and 963.[2] The indictment

District of California, sitting by designation.

1. Although we address only drug quantity, we recognize that the logic of our holding extends to any fact that exposes the defendant to a higher statutory maximum and thus, under *Apprendi*, must be proved to a jury beyond a reasonable doubt.

2. The indictment did not mention §§ 841 and 846, but this omission appears to be a typographical error; both the plea agreement and judgment referred to those statutory provisions.

stated that "[the drug] offense involved one thousand (1000) kilograms or more of marijuana[,]" and Minore stipulated in the plea agreement that the "quantity of drugs on board the OK Tedi was 12,500 pounds (5670 kilograms)," "the quantity of marijuana involved in [the second transaction] was approximately 7000 pounds (3175 kilograms)" and "the quantity of marijuana involved in [the] reverse sting operation was 6300 pounds (2858 kilograms)." The plea agreement also stated that, "[f]or purposes of calculating Gary Minore's sentencing guidelines range under USSG § 2D1.1, the parties agree that the quantity of drugs for which Gary Minore should be held responsible is the marijuana involved in the three loads, namely, a total of 25,800 pounds (11,703 kilograms)."

The plea agreement listed as the elements the government would have to prove beyond a reasonable doubt to convict Minore of the conspiracy charge: (1) that there was an agreement between two or more persons to import marijuana into the United States and to distribute it and (2) that "Minore became a member of this conspiracy knowing of at least one of its objects and intending to help accomplish it." During the plea colloquy, the district court asked Minore whether he understood "that in connection with the conspiracy count ... the government would have to prove those elements" listed in the plea agreement. Minore said he did. The district court did not tell Minore the government would be required to prove the drug quantity—25,800 pounds (11,703 kilograms)—to a jury beyond a reasonable doubt. Rather, consistent with the law at that time, the district court told Minore

that the court would make the ultimate determination of the amount of drugs for which Minore would be held responsible.

The parties agreed in the plea agreement that, pursuant to § 2D1.1 of the Sentencing Guidelines, Minore's base offense level was 36. *See* U.S.S.G. § 2D1.1(a)(3), (c)(2) (Nov. 1, 1998) (assigning base offense level of 36 to violation of §§ 841 and 960 involving between 10,000 and 30,000 kilograms of marijuana). Similarly, the Presentence Report ("PSR") used the drug quantity to calculate the recommended base offense level of 36.[3] *See id.* At sentencing, however, Minore contended that the third transaction constituted sentencing entrapment and should be disregarded. He did not dispute his involvement, or the quantity of marijuana at stake, in the first two transactions. The district court rejected Minore's entrapment argument, adopted the findings and recommendation of the PSR and sentenced Minore to 188 months in prison and five years of supervised release.

During the briefing of Minore's case on appeal, the Supreme Court decided *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). *Apprendi* applies to Minore's appeal because it comes to us on direct review. *United States v. Buckland*, 289 F.3d 558, 563–64 (9th Cir.2002) (*en banc*) (citing *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987)), *amending and superseding* 277 F.3d 1173, *cert. denied*, —— U.S. ——, 122 S.Ct. 2314, 152 L.Ed.2d 1067 (2002). Minore first challenges his conviction on the ground that *Apprendi* rendered § 960 facially unconstitutional, an argument we rejected in *United States v. Mendoza–Paz*, 286 F.3d 1104, 1109–10 (9th Cir.2002).[4] Minore next chal-

---

3. The PSR grouped the conspiracy and money laundering counts, pursuant to U.S.S.G. § 3D1.2(a), and assigned the base offense level pursuant to § 3D1.3(a), which directs that the base offense level be determined by "the most serious ... count[ ]" in the Group, *"i.e.,*

the highest offense level of the counts in the Group." U.S.S.G. § 3D1.3(a) (Nov. 1, 1998).

4. Both Minore and Chinawat raised a number of issues on appeal that we have resolved in a separate unpublished memorandum disposi-

lenges the validity of his guilty plea because the district court did not inform him that, if his case went to trial, the government would be required to prove drug quantity to a jury beyond a reasonable doubt. Whether Rule 11 requires the district court to so advise the defendant is an issue of first impression in our Circuit, and we review de novo the adequacy of the plea colloquy. *United States v. Timbana,* 222 F.3d 688, 702 (9th Cir.), *cert. denied,* 531 U.S. 1028, 121 S.Ct. 604, 148 L.Ed.2d 516 (2000).

## A. Rule 11(c)(1) and Due Process Require the District Court to Inform the Defendant of the Critical Elements of the Offense.

■ Federal Rule of Criminal Procedure 11 is designed "to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary." *McCarthy v. United States,* 394 U.S. 459, 465, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), *superseded on other grounds by* Fed.R.Crim.P. 11(h). Rule 11(c)(1) requires the district court to "address the defendant personally in open court" and advise the defendant of "the nature of the charge to which the plea is offered. . . ." Fed.R.Crim.P. 11(c)(1). " '[R]eal notice of the true nature of the charge against [a defendant is] the first and most universally recognized requirement of due process.' " *Bousley v. United States,* 523 U.S. 614, 618, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (quoting *Smith v. O'Grady,* 312 U.S. 329, 334, 61 S.Ct. 572, 85 L.Ed. 859 (1941)). The requirement serves two functions. First, a defendant's admission of criminal culpability is not meaningful unless the defendant understands the crime to which he is confessing. Notice of the nature of the charge is required to obtain a knowing and intelligent guilty plea. *Id.; accord Henderson v.*

*Morgan,* 426 U.S. 637, 645, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). Second, informing the defendant of the nature of the charge against him "ensures that the defendant thoroughly understands that if he pleads 'not guilty' the State will be required to prove certain facts,' thus permitting the defendant to make an intelligent judgment as to whether he would be better off accepting the tendered concessions or chancing acquittal if the prosecution cannot prove those facts beyond a reasonable doubt." Wayne R. LaFave, Jerold H. Israel & Nancy J. King, 5 *Criminal Procedure* § 21.4(c) (2d ed. 1999) (*"Criminal Procedure "*).

■ To comply with Rule 11(c)(1)'s requirement that the defendant be informed of the "nature of the charge," the district court must advise the defendant of the elements of the crime and ensure that the defendant understands them. *United States v. Seesing,* 234 F.3d 456, 461–62 (9th Cir.2001); *United States v. Longoria,* 113 F.3d 975, 977 (9th Cir.1997); *United States v. Bruce,* 976 F.2d 552, 559–60 (9th Cir.1992); *Irizarry v. United States,* 508 F.2d 960, 965–66 (2d Cir.1975); *United States v. Landry,* 463 F.2d 253, 254 (9th Cir.1972); 5 *Criminal Procedure* § 21.4(c) (" 'An explanation of the elements of the charge helps to assure that the defendant fully appreciates the nature of the offense to which the plea is tendered. Since a guilty plea is a formal admission of all elements of the charge, a defendant, in fairness, should be formally advised of the elements before the plea is accepted.' " (quoting 3 ABA Standards for Criminal Justice § 14–23 (2d ed.1980))).

■ Due process requires that the defendant be informed of the "critical" elements of the offense. In *Henderson,* the Supreme Court reversed the defendant's

tion. Our opinion addresses only defendants' *Apprendi*-based claims.

conviction because the defendant was not informed that second-degree murder, to which he was pleading guilty, required the government to prove intent to cause death. The Court explained that Morgan's plea could not be considered voluntary without "adequate notice of the nature of the charge against him, or proof that he in fact understood the charge[.]" 426 U.S. at 645 n. 13, 96 S.Ct. 2253. Assuming that "notice of the true nature, or substance, of a charge [does not] always require[ ] a description of every element of the offense," the Court limited its holding to "critical" elements. *Id.* at 647 n. 18, 96 S.Ct. 2253; *see also Bousley,* 523 U.S. at 618–19, 118 S.Ct. 1604 (observing that defendant's plea would be "constitutionally invalid" if "neither he, nor his counsel, nor the court correctly understood the *essential* elements of the crime with which he was charged." (emphasis added)); *Bargas v. Burns,* 179 F.3d 1207, 1215 (9th Cir.1999); *United States v. Newman,* 912 F.2d 1119, 1124 and n. 6 (9th Cir.1990). As we explain below, when drug quantity exposes the defendant to a higher statutory maximum sentence than he would otherwise face, drug quantity is not only an element of the offense, it is a critical element.[5]

### B. Drug Quantity Can Be the Functional Equivalent of a Critical Element.

In *Apprendi,* the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348. Drug quantity will often fall within *Apprendi*'s rule. Here, both §§ 841 and 960 prescribe different statutory maximums for violations involving varying quantities of drugs. Under § 960, a violation involving an unspecified quantity of marijuana will trigger a statutory maximum of five years in prison, whereas a violation involving more than 1000 kilograms of marijuana triggers a maximum sentence of life in prison. *Compare* 21 U.S.C. § 960(b)(4) *with* 21 U.S.C. § 960(b)(1)(G). Similarly, a defendant may be imprisoned for life for a violation of § 841 involving more than 1000 kilograms of marijuana, but will face only a five year maximum for a violation involving an unspecified quantity of marijuana. *Compare* 21 U.S.C. § 841(b)(1)(A)(vii) *with* 21 U.S.C. § 841(b)(1)(D). If a defendant distributes only "a small amount" of marijuana for "no remuneration," he will face a statutory maximum of one year in prison. 21 U.S.C. §§ 841(b)(3), 844(a). Had Minore elected to go to trial in a post-*Apprendi* world, *Apprendi* would have required the government—in order to have Minore sentenced to 188 months in prison—to ask the jury to find beyond a reasonable doubt that the offense involved an amount of drugs sufficient to support the sentence; i.e., in excess of 1000 kilograms of marijuana. Under these circumstances, drug quantity—even though usually labeled a sentencing factor—is the "functional equivalent" of an element. *Apprendi,* 530 U.S. at 494 n. 19, 120 S.Ct. 2348; *see also Buckland,* 289 F.3d at 565–66 ("*Apprendi* eschews the distinction between sentencing factors and elements of a crime: 'the relevant inquiry is not one of form, *but of effect*—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?' ... The days of semantical hair splitting between 'elements of the offense' and 'sentencing factors' are over." (citations omitted)). Where drug quantity

---

**5.** We express no opinion as to whether Rule 11(c)(1) requires the district court to advise the defendant of *every* element of the offense even when not constitutionally mandated. *Henderson,* 426 U.S. at 647 n. 18, 96 S.Ct. 2253.

exposes the defendant to a higher statutory maximum sentence, "it fits squarely within the usual definition of an 'element' of the offense." *Apprendi,* 530 U.S. at 494 n. 19, 120 S.Ct. at 2365 n. 19.

It also follows that drug quantity in such circumstances would qualify as a "critical" element under *Henderson.* Admittedly, unlike the intent element in *Henderson,* a finding of drug quantity is not necessary to convict Minore of violating §§ 841(a) or 960(a). *E.g., United States v. Brinton,* 139 F.3d 718, 723 (9th Cir.1998) (explaining that general verdict required jury to find only that defendant possessed "some" quantity of controlled substance), *overruled on other grounds by United States v. Nordby,* 225 F.3d 1053, 1059 (9th Cir. 2000), *overruled in part by Buckland,* 289 F.3d at 567–68. But, for purposes of assessing what a defendant must understand about the nature of the charges against him before his plea can be considered knowing and voluntary, we have no trouble concluding that the dramatic impact of drug quantity on sentencing renders that element critical.

█ We therefore hold that, where drug quantity exposes the defendant to a higher statutory maximum sentence than he would otherwise receive, it is the functional equivalent of a critical element within the meaning of *Henderson.* Rule 11(c)(1) and due process require the district court to advise the defendant of each critical element of the offense. Accordingly, the district court must advise the defendant that the government would have to prove drug quantity as it would prove any element—to the jury beyond a reasonable doubt. Because the district court did not inform Minore during the plea colloquy that the government would have to prove to a jury beyond a reasonable doubt that Minore

was responsible for more than 1000 kilograms of marijuana, the colloquy did not comply with Rule 11(c)(1).

## C. The Rule 11 Error Was Plain Error, but Did Not Seriously Affect the Fairness, Integrity or Public Reputation of Judicial Proceedings.

█ We next determine whether the Rule 11 error entitles Minore to relief here. Because Minore did not raise the issue below, we will not reverse his conviction unless the district court committed plain error. *United States v. Vonn,* —— U.S. ——, ——––——, 122 S.Ct. 1043, 1048–54, 152 L.Ed.2d 90 (2002) (holding that defendant who fails to bring Rule 11 error to district court's attention must satisfy plain error rule on appeal); *accord United States v. Ma,* 290 F.3d 1002, 1005 (9th Cir.2002). "There must be an 'error' that is 'plain' and that 'affects substantial rights.' "[6] *United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (brackets omitted). If those requirements are met, we will exercise our discretion to correct the error only if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (brackets and internal quotations omitted.)

We have already concluded that the district court erred in failing to inform Minore that the government would be required to prove drug quantity to the jury beyond a reasonable doubt. The error is also "plain." " 'Plain' is synonymous with 'clear,' or, equivalently, 'obvious.' " *Id.* at 734, 113 S.Ct. 1770. At the time of Minore's plea colloquy, it was settled that drug quantity was a *sentencing factor* to be determined by the judge by a prepon-

---

**6.** The defendant "bears the burden of persuasion" with respect to the "substantial rights" prong. *United States v. Olano,* 507 U.S. 725, 734–35, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

derance of the evidence. *E.g., Nordby,* 225 F.3d at 1059; *Brinton,* 139 F.3d at 722–23. Under our current law, however, a finding of drug quantity, when it exposes the defendant to a higher statutory maximum than he would face for an unspecified amount of drugs, must be made by the jury beyond a reasonable doubt. *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348; *United States v. Tighe,* 266 F.3d 1187, 1194–95 (9th Cir.2001); *Nordby,* 225 F.3d at 1059. As discussed above, it is equally clear that a defendant must be so advised before entering his guilty plea. "[I]n a case such as this—where the law at the time of [district court proceedings] was settled and clearly contrary to the law at the time of appeal—it is enough that an error be 'plain' at the time of appellate consideration." *Johnson v. United States,* 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997); *accord United States v. Jordan,* 256 F.3d 922, 929–30 (9th Cir.2001); *Nordby,* 225 F.3d at 1060.

We must next determine what questions we ask when assessing whether the district court's Rule 11 error affected Minore's "substantial rights." Only one Ninth Circuit opinion has reviewed a district court's Rule 11 violation for plain error, and that panel did not prescribe a general approach to the "substantial rights" prong of *Olano.*[7] *See Ma,* 290 F.3d at 1005. We hold that, for purposes of plain

error review, a defendant's substantial rights are affected by Rule 11 error where the defendant proves that the court's error was not minor or technical and that he did not understand the rights at issue when he entered his guilty plea. These are the same substantive questions we ask when we review Rule 11 errors for harmless error. *United States v. Graibe,* 946 F.2d 1428, 1433–34 (9th Cir.1991). Our decision to "borrow" our harmless error analysis in crafting an approach to the "substantial rights" prong of plain error review comports with our precedent and the language of Federal Rule of Criminal Procedure 52.

The Supreme Court in *Olano* explained that plain error review "normally requires the same kind of inquiry" as harmless error review "with one important difference: It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." 507 U.S. at 734, 113 S.Ct. 1770. We recognized as much in *United States v. Castillo–Casiano,* 198 F.3d 787 (9th Cir.1999), *amended by* 204 F.3d 1257 (9th Cir.2000). There, in determining whether the district court's sentencing error affected the defendant's substantial rights under the third prong of *Olano,* we applied the same "substantive standard" as governs harmless error review.[8] *Id.* at 790 ("[I]n most cases, the third prong of the plain error test calls on the court of appeals to conduct a harm-

7. In *United States v. Vonn,* —— U.S. ——, 122 S.Ct. 1043, 1046, 152 L.Ed.2d 90 (2002), the Supreme Court held that, contrary to our prior precedent, *see United States v. Odedo,* 154 F.3d 937, 940 (9th Cir.1998), a defendant who does not object to a Rule 11 violation but raises it on appeal must satisfy the plain error rule of Fed.R.Crim.P. 52(b).

8. Castillo's sentence was enhanced because he had been previously deported after a conviction for an aggravated felony. *Castillo–Casiano,* 198 F.3d at 788. At the time of his sentencing, our authority held that a district court could not consider the nature of the

prior conviction in order to depart downward. *United States v. Rios–Favela,* 118 F.3d 653, 660 (9th Cir.1997). However, while Castillo's appeal was pending, we changed our rule. *United States v. Sanchez–Rodriguez,* 161 F.3d 556, 558 (9th Cir.1998) (en banc). On appeal, Castillo asked to be resentenced so that the court could depart downward under *Sanchez–Rodriguez. Castillo–Casiano,* 198 F.3d at 789. We reviewed his claim for plain error and, in determining whether the third *Olano* prong was satisfied, we engaged in the same substantive analysis as we would have in reviewing for harmless error. *Id.* at 790–92.

less error inquiry in order to determine if the error was prejudicial to the defendant."). This result comports with the language of Rule 52:

> (a) Harmless Error. Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.
>
> (b) Plain Error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

Both the harmless error and plain error provisions provide relief for errors that affect substantial rights. Thus, in determining whether a Rule 11 error affected the defendant's substantial rights for the purposes of plain error review, we will borrow this Circuit's harmless error analysis insofar as it focuses on the substantive question to be resolved. *See United States v. Martinez,* 277 F.3d 517, 527, 532 (4th Cir.2002) (focusing on same inquiry to determine whether substantial rights were affected under both harmless error and plain error standards).

■ Under harmless error analysis, the government has the burden of showing that the district court's Rule 11 error was minor or technical, or the record must affirmatively show that the defendant was aware of the rights at issue when he entered his guilty plea. *Graibe,* 946 F.2d at 1433–34. Conversely, however, under plain error analysis "[i]t is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." *Olano,* 507 U.S. at 734, 113 S.Ct. 1770; *see id.* at 734–35, 113 S.Ct. 1770 (reasoning that "[t]his burden-shifting is dictated by a subtle but important difference in language between the two parts of Rule 52"); *Martinez,* 277 F.3d at 527, 532 (placing burden on government to show harmless error and on defendant to show plain error in Rule 11 context); *see also Castillo–Casiano,* 198 F.3d at 791 n. 4, *as*

*amended by* 204 F.3d at 1257 ("This standard for determining whether the error was harmless applies in both plain error and harmless error cases, because shifting the burden from the government to the defendant, as we do in Rule 52(b) plain error cases (including the present case) does not affect the substantive standard governing what renders an error prejudicial."). Thus, for purposes of plain error review we shall consider a Rule 11 violation to have affected a defendant's substantial rights only when the *defendant* proves that (1) the district court's error was not minor or technical *and* that (2) the defendant did not understand the rights at issue when he entered his guilty plea. *Cf. United States v. Bigman,* 906 F.2d 392, 394–95 (9th Cir.1990) (remanding for evidentiary hearing regarding voluntariness of plea because record did not indicate whether defendant understood intent element).

■ In ascertaining the defendant's understanding of the rights at issue, we are not restricted to the record of the plea colloquy. *Vonn,* 122 S.Ct. at 1054–55. Instead, we may look to " 'other portions (*e.g.,* sentencing hearing) of the limited record made in [guilty plea] cases.' " *Id.* (quoting Advisory Committee's Notes on 1983 Amendments to Fed. Rule Crim. P. 11, 18 U.S.C.App., p. 1569 (quoting in turn *United States v. Coronado,* 554 F.2d 166, 170 n. 5 (5th Cir.1977))). Here, it is undisputed that Minore did not understand that he had a right to make the government prove the quantity of drugs to a jury beyond a reasonable doubt. Indeed, consistent with the law at the time, Minore was told that the judge would determine drug quantity. Moreover, for the reasons discussed above, this error was neither minor nor technical. *See Longoria,* 113 F.3d at 977 ("The defendant's right to be informed of the charges against him is at the core of

Rule 11, which exists to ensure that guilty pleas are knowing and voluntary.") Accordingly, Minore's substantial rights were affected by the district court's Rule 11 error.

■■■ We nevertheless deny Minore relief because the district court's error did not "seriously affect[ ] the fairness, integrity or public reputation of judicial proceedings." *Olano,* 507 U.S. at 732, 113 S.Ct. 1770 (brackets and internal quotation marks omitted). Minore unequivocally admitted in his plea agreement, during his plea colloquy and at his sentencing hearing that he should be held responsible for the first two loads of marijuana. Those first two transactions involved 19,500 pounds (8845 kilograms) of marijuana—a quantity far greater than the 1000 kilograms required to expose Minore to a statutory maximum sentence of life in prison.[9] Because overwhelming evidence existed that Minore trafficked in drug quantities well in excess of those necessary to expose him to a potential life sentence, it is not unfair to hold him to his guilty plea. *See United States v. Wallace,* 276 F.3d 360, 369 (7th Cir.2002) (holding fourth *Olano* prong not satisfied where court failed to advise defendant that government had to prove drug quantity to a jury beyond a reasonable doubt because defendant admitted quantity "under oath, both in his stipulation of facts and during the plea colloquy, and conceded at sentencing that the government could prove [the quantity] beyond a reasonable doubt"). *Cf. United States v. Cotton,* —— U.S. ——, ——, 122 S.Ct. 1781, 1786, 152 L.Ed.2d 860, —— (2002) (holding that failure to charge drug quantity in indictment was error and plain, but did not seriously affect the fairness, integrity or public reputation of the proceedings

because the evidence of drug quantity was " 'overwhelming' " and " 'essentially uncontroverted' "); *Johnson,* 520 U.S. at 470, 117 S.Ct. 1544 (holding that failure to instruct jury about materiality element did not seriously affect fairness because evidence was "overwhelming" and "essentially uncontroverted"). *Compare United States v. Perez,* 270 F.3d 737, 740 (8th Cir.2001) (failure to advise defendant at plea taking that jury must decide drug quantity did not seriously undermine the fairness, integrity or public reputation of the proceeding where defendant agreed he was responsible for sufficient quantities to subject him to enhanced punishment under § 841(b)(1)(B)).

## II.

### *Chinawat*

Chinawat was convicted by a jury of conspiracy to import and distribute marijuana, in violation of 21 U.S.C. §§ 952 and 960(a)(1); possession of marijuana on board a vessel with intent to distribute, in violation of 46 U.S.C. § 1903(a); and attempted importation of marijuana, in violation of §§ 952 and 960(a)(1). Although the indictment charged that each offense involved more than 1000 kilograms of marijuana, the jury was instructed that "[t]he government is not required to prove that the amount or quantity of marijuana was as charged in the Indictment. It need only prove beyond a reasonable doubt that there was a measurable or detectable amount of marijuana."

The PSR recommended that Chinawat be held responsible for the first two loads of marijuana, totaling 19,500 pounds (8845 kilograms). The government agreed, and Chinawat did not file any objections to the

---

**9.** For this reason, we need not reach the question of whether, after admitting to his involvement in the third transaction as part of the factual basis for his plea and agreeing in

his plea agreement that he should be held responsible for all three loads, Minore should be permitted to disavow the third transaction for purposes of sentencing.

PSR or contest the drug quantity at the sentencing hearing. Citing § 2D1.1(c), which assigns the base offense level according to the quantity and type of drug attributable to the defendant, the PSR calculated a base offense level of 34, corresponding to a range of 151 to 188 months in prison. The district court accepted the PSR's recommendation and sentenced Chinawat to 145 months in order to give him credit for the six months he served in a prison in Cambodia. Chinawat also was ordered to serve five years of supervised release.

■■■ Chinawat raises two *Apprendi*-based challenges to his sentence. Like Minore, Chinawat argues that § 960 is facially unconstitutional, but this claim is foreclosed by *Mendoza–Paz,* 286 F.3d at 1109–10. Chinawat next contends that his 145-month sentence violates *Apprendi* because it was based upon the district court's preponderance-of-the-evidence finding that Chinawat was responsible for 8845 kilograms of marijuana. Because the Supreme Court issued *Apprendi* after Chinawat's sentencing, he did not raise this issue before the district court. We therefore review his sentence for plain error. *Olano,* 507 U.S. at 732, 113 S.Ct. 1770. In doing so, we clarify our Circuit's approach to the "substantial rights" prong of the plain error inquiry in the context of *Apprendi* sentencing errors.

■■■■ The jury was not instructed to find the amount of marijuana involved in Chinawat's crimes. Rather, it was in-structed that it need find only a measurable or detectable amount. Therefore, the greatest punishment authorized by the jury's guilty verdict is five years in prison. 21 U.S.C. § 960(b)(4) (prescribing maximum for a violation of § 960(a) involving fewer than 50 kilograms of marijuana). The district court, however, adopted the PSR's finding that Chinawat was responsible for 8845 kilograms of marijuana. This finding of drug quantity exposed Chinawat to a statutory maximum of life in prison. 21 U.S.C. § 960(b)(1)(G) (prescribing mandatory minimum and maximum for offense involving 1000 kilograms or more of marijuana). Because the district court did not submit the question of drug quantity to the jury for a beyond-a-reasonable-doubt determination, the court violated *Apprendi.*[10] 403 U.S. at 494, 91 S.Ct. 2022. Moreover, even though *Apprendi* had not been issued at the time of sentencing, the error is "plain" because it is plain on appeal. *Nordby,* 225 F.3d at 1060.

Chinawat cannot demonstrate, however, that the error affected his substantial rights. Until our *en banc* decision in *Buckland,* there were two potential approaches—first identified in *Nordby*—to the question of whether a defendant's substantial rights were affected by a district court's *Apprendi* error at sentencing.[11] The first, which *Nordby* identified as the "less stringent" approach, "is simply to weigh the extra sentence imposed upon [the defendant] beyond that permitted by the jury's verdict." According to this ap-

**10.** Although our cases sometimes conflate the question of whether an *Apprendi* violation occurred with the question of whether the error requires resentencing, the inquiries are distinct. *Apprendi* makes clear that, in determining whether an error has occurred, the relevant inquiry is whether "the ... finding *exposes* the defendant to a greater punishment than that authorized by the jury's guilty verdict." 530 U.S. at 495, 120 S.Ct. 2348 (emphasis added and brackets omitted). *See also*

*Cotton,* 122 S.Ct. at 1785 (noting that government conceded error where indictment did not allege fact that "increased the statutory maximum sentence").

**11.** Of course, *Nordby*'s logic, and our discussion, applies with equal force to errors premised on failure to instruct as to drug type, or any question of fact that must be proved to the jury beyond a reasonable doubt in the post-*Apprendi* world.

proach, if the defendant receives a sentence greater than that supported by the jury's findings, then he has successfully demonstrated that his substantial rights were affected. 225 F.3d at 1060. The "second, more stringent approach would be to treat drug quantity as the equivalent of an element of the offense on which the jury was not instructed." This approach would require the court to "inquire whether it was 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" *Id.* (quoting *Neder v. United States,* 527 U.S. 1, 18, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)). Thus, a defendant would bear the burden of raising a reasonable doubt as to the drug quantity. *Id. Nordby* declined to decide which of the two approaches was the "proper one," because Nordby raised a reasonable doubt as to the quantity of drugs for which he was responsible and thus qualified for plain error relief under the more stringent analysis. *Id.*

Here, 2363 kilograms of marijuana—an amount sufficient to trigger a statutory maximum sentence of life in prison—were recovered from the OK Tedi. The jury convicted Chinawat for his involvement in that shipment and Chinawat did not object to the quantity at sentencing. Chinawat therefore cannot raise a reasonable doubt as to whether he was responsible for 1000 kilograms or more of marijuana. On the other hand, Chinawat's 145–month sentence far exceeded the 60–month maximum sentence authorized by the jury's verdict. Because Chinawat satisfies the less stringent standard, but not the more stringent one, we must decide which one is appropriate in determining whether the district court's plain error affected Chinawat's substantial rights. This Circuit has not explicitly addressed the issue, but it appears we did so implicitly in our recent

*en banc* decision in *Buckland,* 289 F.3d at 568–70.

Buckland was sentenced to 27 years in prison as a result of the district court's preponderance-of-the-evidence finding that he was responsible for approximately eight kilograms of methamphetamine. *Id.* at 561–62. The maximum sentence authorized by the jury's verdict, however, was only 20 years in prison. *See* 21 U.S.C. § 841(b)(1)(C) (relating to an offense involving an unspecified quantity of methamphetamine, a schedule II drug). Thus, Buckland satisfied the less stringent test for determining whether his substantial rights were affected. Nonetheless, we denied Buckland relief. Buckland had been found with over 700 grams of methamphetamine in his possession, he never objected to that amount and his attorney conceded that he was responsible for one to three kilograms of methamphetamine. *Id.* at 568–70. Recognizing that either "the unchallenged amount . . . taken from Buckland by the authorities, or . . . the amount conceded by his attorney" would be sufficient to trigger a maximum life sentence pursuant to § 841(b)(1)(A)(viii) (which prescribes a maximum sentence of life for an offense involving 50 grams or more of methamphetamine), we concluded that "it appears *beyond all doubt* that the *Apprendi* error in this case did not affect the outcome of the proceedings, and, accordingly, did not affect Buckland's substantial rights." *Id.* at 569–70 (emphasis added). Although we did not explicitly reject the less stringent approach in favor of the more stringent approach—or even acknowledge *Nordby*'s discussion of the issue—it is a necessary implication of the final decision to deny Buckland relief that we rejected *Nordby*'s less stringent approach to the substantial rights prong of *Olano.*[12]

---

**12.** We do not suggest that the less stringent approach is no longer available on harmless error review. Although harmless error and plain error "normally require[ ] the same

We apply the more stringent test here. Chinawat's situation is similar to that in *Buckland.* About 5200 pounds (2363 kilograms) of marijuana—an amount sufficient to trigger a statutory maximum penalty of life in prison—were recovered from the OK Tedi, and the jury found beyond a reasonable doubt that Chinawat was a member of the conspiracy to import that first shipment. Chinawat failed to contest the 2363 kilograms at the sentencing hearing, and though Chinawat's attorney did not concede that Chinawat was responsible for more than 1000 kilograms of marijuana, she did not ask for an evidentiary hearing on the matter. Therefore, Chinawat cannot raise a reasonable doubt as to whether he was responsible for more than 1000 kilograms of marijuana. Even though his sentence exceeded the statutory maximum authorized by the jury's verdict, it is " 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.' " *Nordby*, 225 F.3d at 1060. Accordingly, *Buckland* compels us to hold that Chinawat's substantial rights were not affected by the district court's *Apprendi* error.

*Buckland* also endorses an alternative ground on which to hold that Chinawat's substantial rights were not affected by the district court's *Apprendi* error. Even if Chinawat were subject to only 60 months on each count of conviction, the district court would have been required to impose the same 151–month sentence by "stacking" under § 5G1.2(d), which governs sentencing on multiple counts of conviction.

Under that guideline provision, the district court would have been required to impose consecutive sentences up to the point of the "total punishment," which is the minimum sentence in the guideline range. *See* U.S.S.G. § 5G1.2(d) and commentary (Nov. 1, 1998); *United States v. Archdale*, 229 F.3d 861, 870 (9th Cir.2000) (defining "total punishment"). Because the guideline range was 151 to 188 months, § 5G1.2(d) would have required the court to impose the same sentence. Rather than imposing a 151–month sentence on any one count, the court would have been required to impose 60 months on Count 1, 60 months on Count 3 and 31 months on Count 4, to be served consecutively. *See Buckland,* 289 F.3d at 569–72 (citing *United States v. Angle,* 254 F.3d 514 (4th Cir.) (en banc), *cert. denied,* —— U.S. ——, 122 S.Ct. 309, 151 L.Ed.2d 230 (2001)); *United States v. Kentz,* 251 F.3d 835, 842 (9th Cir.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 1309, 152 L.Ed.2d 219 (2002). Accordingly, Chinawat's substantial rights were not affected by the court's *Apprendi* error and his sentence must stand. *Buckland,* 289 F.3d at 571–72.

**AFFIRMED.**

---

kind of inquiry," except that different parties "bear the burden of persuasion with respect to .prejudice," *Olano*, 507 U.S. at 734, 113 S.Ct. 1770, this is not always the case. In the harmless error context, we have considered the length of the defendant's sentence to be sufficient to render an *Apprendi* error not harmless. *Tighe*, 266 F.3d at 1195 ("Because Tighe's sentence of 180 months for his viola-tion of 18 U.S.C. § 922(g)(1) is in excess of the applicable statutory maximum (10 years) based upon the jury's findings, we hold this error is not harmless."); *see also United States v. Jordan*, No. 00–10233, 2002 WL 1067325, at *3, 291 F.3d 1091 (9th Cir.2002) (discussing harmless error analytical options in light of *Nordby* and *Buckland* ).