**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Eliodoro VALENSIA, Defendant–Appellant.**

**No. 99–10170.**

United States Court of Appeals, Ninth Circuit.

Filed Aug. 8, 2002.

---

Patience Milrod, Law Office of Patience Milrod, Fresno, CA, for the defendant-appellant.

William L. Shipley, Assistant United States Attorney, Fresno, CA, for the plaintiff-appellee.

Before ALARCÓN, TASHIMA, and SILVERMAN, Circuit Judges.

ALARCÓN, Circuit Judge.

Eliodoro Valensia appeals from the sentence of imprisonment for 262 months imposed by the district court following his guilty plea to the crime of conspiracy to manufacture and possess methamphetamine with the intent to distribute it, in violation of 21 U.S.C. §§ 846 and 841(a)(1). We filed our original opinion in this matter on August 1, 2000. *United States v. Valensia,* 222 F.3d 1173 (9th Cir.2000). The United States Supreme Court granted Valensia's petition for certiorari on March 5, 2001. On that date, the Court vacated our judgment and remanded this matter for further consideration in light of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). *Valensia v. United States,* 532 U.S. 901, 121 S.Ct. 1222, 149 L.Ed.2d 133 (2001).

Valensia contends that the district court deprived him of his rights under the Fifth Amendment to a valid indictment and his Sixth Amendment right to be informed of the nature of the accusation against him by sentencing him in excess of the statutory maximum for a violation of § 841(a). He argues that his sentence must be vacated because the quantity and purity of the methamphetamine were neither alleged in the indictment nor admitted by him during the proceedings to determine the factual basis for his plea of guilty. He also maintains that the court erred in applying the preponderance of the evidence standard in adopting the probation officer's proposed finding that Valensia was responsible for possessing 35.71 kilograms of methamphetamine.

We conclude that the Government erred in failing to allege a quantity of methamphetamine in the indictment that would support a sentence of imprisonment for 262 months, and that the district court violated Rule 11(c)(1) and (f) of the Federal Rules of Criminal Procedure by failing to inform Valensia that the Government would be required to persuade the trier of fact beyond a reasonable doubt regarding the quantity of the controlled substance, and by not eliciting from Valensia, during the plea colloquy, as part of the factual basis for his guilty plea, an admission that the quantity of methamphetamine he manufactured and possessed for distribution exceeded 50 grams.

We affirm, however, because we conclude that Valensia failed to demonstrate

that these violations of his rights constituted plain error.

## I

Valensia and his co-defendants were charged in a superseding indictment, filed on July 10, 1997, with conspiracy to manufacture and possess an unspecified amount of methamphetamine with the intent to distribute it. The superseding indictment alleges that the defendants "did knowingly and intentionally conspire and agree together, and with other persons both known and unknown to the Grand Jury, to manufacture and possess with intent to distribute methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1)."

### A.

On June 15, 1998, Valensia's defense counsel informed the court that his client wished to enter a guilty plea, but could not do so because Valensia and the Government could not agree on a statement of the factual basis for the plea. The matter was set for trial on September 28, 1998. On that date, Valensia unilaterally filed a document styled as a "Memorandum of Offer to Plead Guilty, Statement of Premesis and Acknowlegdment [sic] of Rights"

("Plea Memorandum"). Valensia's Plea Memorandum provides that he would plead guilty "because he is in fact guilty of the crime set forth in the Indictment." Valensia expressly acknowledged in his Plea Memorandum that the maximum sentence for the charged offense was life in prison, and that the minimum sentence was ten years. He also alleged in his Plea Memorandum that he and others attempted to manufacture methamphetamine at 6291 East Clarkson Avenue, Selma, California, and at 1272 Houston, Hanford, California. He further admitted that on or about October 4, 1996, he and others had the chemicals and equipment to manufacture methamphetamine at an address on Myrtle Avenue, Reedley, California.[1]

Valensia also stated in his Plea Memorandum that he understood that

> the Government will fully apprise the Probation Office, as well as the Court, of their belief as to the full and true nature, scope, and extent of the Defendant's criminal activities and relevant conduct concerning the charges to which he is pleading guilty. This may include activities which may not have been charged in the Indictment.

The Plea Agreement was signed by Valensia, his attorney, and the person who

---

1. The Plea Memorandum provides that "[t]he Defendant agrees the following stated facts are true and correct of his own knowledge."

 Between July 1, 1996, and October 4, 1996, the Defendant did agree with other persons, both named and unnamed in the Indictment, to manufacture for sale a controlled substance, to wit: methamphetamine. In furtherance of this criminal conspiracy, on or about July 12, 1996, the Defendant and others did obtain chemicals and begin the attempt to manufacture methamphetamine at 6291 E. Clarkson Ave., Selma, California. This location is within the Eastern District of California. The owner of the property was paid for the use of the property.

 During the month of September, 1996, the Defendant and others "manufactured meth-

amphetamine at the residence at 1272 Houston, Hanford, California." This location is within the Eastern District of California. The owner of the property was paid for the use of a building to manufacture methamphetamine. Chemicals used at this location were obtained by relatives of the Defendant, and delivered to the Hanford residence. At the conclusion of the manufacturing activity, the equipment was moved to 43010 Road 52, Reedley, California. This location is within the Eastern District of California. On or about October 4, 1996, the defendant and others had chemicals and equipment intended to be used to manufacture methamphetamine at an address on Myrtle Avenue in Reedley, California.

translated the Plea Memorandum into the Spanish language.

### B.

At his change of plea proceedings, Valensia was placed under oath and questioned by the court regarding the statement of facts set forth in the Plea Memorandum. The court advised Valensia that the maximum punishment for the crime charged in the superseding indictment was life imprisonment, and that the mandatory minimum was ten years. Valensia testified that he understood the potential punishment that he faced. Valensia also testified: (1) that he and others obtained chemicals and attempted to manufacture methamphetamine at 6291 East Clarkson Avenue, Selma, California; (2) that he and others manufactured methamphetamine at 1272 Houston, Hanford, California; and (3) that he and others moved equipment and chemicals to Reedley, California to use in manufacturing methamphetamine. Following advisement of his constitutional rights, Valensia pled guilty to the charge in the superseding indictment.

### C.

The sentencing proceedings were scheduled for December 16, 1998. The United States Probation Office prepared a Presentence Report ("PSR") which provided that Valensia was responsible for 70 pounds (31.75 kilograms) of liquid methamphetamine and 8.75 pounds (3.96 kilograms) of finished methamphetamine. At the December 16, 1998 hearing, Valensia objected to the PSR's conclusion that the 70 pounds of liquid methamphetamine was equivalent to "70 pounds of finished product." In response, the district court noted that "even if we didn't consider one ounce of the liquid," Valensia was still responsible for at least 3.96 kilograms of finished methamphetamine. Valensia's attorney conceded that "I think that at the very best, I could possibly prove that there were more than 5, but less than 15 kilos [of methamphetamine]. But as an offer of proof, I do not think I could, under any circumstances, reduce the relevant offense amount below 5 kilos according to the current [guideline] ranges."

Following this colloquy, the district court continued Valensia's sentencing hearing until March 12, 1999 in order to give Valensia more time to present evidence regarding a proposed sentencing enhancement based on his role in the offense. Valensia raised no further objection to the quantity of drugs set forth in the PSR.

### D.

At the March 12, 1999 sentencing hearing, the district court found as follows: "There is no dispute that the quantity of liquid methamphetamine seized ... was 70 pounds, capable of producing 70 pounds of finished meth ... [a]lso, 2.75 pounds of finished methamphetamine, which converts to 1.24 kilos." The district court also found that Valensia was responsible for 6 pounds (2.72 kilograms) of methamphetamine discovered at another location. The district court concluded that Valensia was responsible for a total of 35.71 kilograms of methamphetamine, and it sentenced Valensia to a term of 262 months imprisonment based on that amount. No objection was made to the court's finding regarding the total quantity of methamphetamine, or to the sentence imposed by the court.

### II

Valensia was sentenced in this matter on March 12, 1999, prior to the publication of the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Thus, the district court and the parties were unaware of the principles announced in *Apprendi* at the time of the filing of the

indictment, the entry of the guilty plea, and the pronouncement of sentence.

Following the Supreme Court's remand of this matter for further consideration in light of its decision in *Apprendi,* we ordered the parties to file supplemental briefs. In a supplemental brief filed on March 30, 2001, Valensia states that "the district court committed reversible error by sentencing Mr. Valensia in excess of the statutory maximum when the quantity and purity of the controlled substance involved were neither pled in the indictment, admitted as part of Valensia's plea colloquy, nor found by a jury beyond a reasonable doubt."

Valensia contends that the indictment accused him of committing a crime involving an unspecified quantity of a controlled substance which is punishable by a sentence of no more than 20 years.[2] He asserts that the court violated his Fifth and Sixth Amendment rights to indictment and notice by sentencing him based on a quantity of a controlled substance that is punishable by a term greater than 20 years. Valensia further maintains that the standard of review should be de novo because the failure to allege the quantity on the indictment constituted jurisdictional error. Valensia requests that we vacate

the judgment and remand for resentencing because the district court sentenced him to serve 262 months in prison, a term that is 22 months greater than the maximum term of imprisonment for the crime of conspiracy to manufacture, distribute, and possess *an unspecified amount* of methamphetamine with the intent to distribute it, in violation of 21 U.S.C. §§ 846 and 841(a)(1).

In its supplemental responsive brief, the Government requests that we apply the plain error standard of review because Valensia failed to object at the time of sentencing that a sentence greater than 20 years would violate due process, and he failed to argue before the district court that its finding that Valensia's criminal activity involved more than 50 grams of methamphetamine was erroneous.[3] The Government also maintains that the impact of the failure to plead the quantity of the controlled substance in the indictment is subject to plain error review because Valensia failed to object to this omission in the district court.

In his May 4, 2001 supplemental reply brief, Valensia contends that the quantity of the controlled substance is an essential element of the offense set forth in the indictment. He argues that the failure to

---

**2.** The maximum penalty for an unspecified amount of methamphetamine is 20 years. 21 U.S.C. § 841(b)(1)(C).

**3.** The parties contest whether the district court erred in failing to apply the reasonable doubt standard of proof, *i.e.,* in applying the preponderance of the evidence standard, in determining the quantity of the drugs involved. The underlying error, however, was the court's treating drug quantity as an ordinary sentencing factor and, thus, failing to comply with Fed.R.Crim.P. 11(f)'s requirement that the record establish "a factual basis for the plea" with respect to drug quantity.

Rule 11 requires "that the sentencing judge must develop, *on the record,* the factual basis for the plea...." *Santobello v. New*

*York,* 404 U.S. 257, 261, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *see also United States v. Jimenez–Dominguez,* 296 F.3d 863, 866–67 (9th Cir.2002) (stating that one of the "constitutionally-required determinations" in a valid guilty plea is "a factual basis which supports [the] conviction"); *United States v. Kamer,* 781 F.2d 1380, 1386 (9th Cir.1986) (valid guilty plea requires compliance with Rule 11(f)). We thus focus our discussion on Rule 11's requirement of a factual basis for the plea, rather than on the proper standard of proof to be employed when drug quantity is an ordinary sentencing factor to be determined by the sentencing judge, rather than established at trial or as part of the factual basis for a guilty plea.

allege the quantity may be raised for the first time on appeal because the alleged constitutional error is jurisdictional.

Valensia filed his second supplemental brief on May 30, 2001. In it, he contends that the district court committed per se reversible error in sentencing him for a crime not alleged in the indictment.

In response to the second supplemental brief, the Government contends that "*Apprendi* did not make drug quantity an element of a § 841 offense." The Government further asserts: "Since drug type and quantity are not elements, there is no requirement that they be included in the indictment." The Government further asserts that assuming that the drug quantity is an element of the crime for which Valensia was sentenced, the failure to allege it was not structural error requiring automatic reversal.

### III

The *Apprendi* decision precipitated an avalanche of appeals to this court seeking resolution of sentencing issues not squarely addressed by the Supreme Court. We vacated submission of this matter on August 16, 2001, pending the disposition of appeals in matters under submission before other panels of this court that raised similar issues pursuant to United States Court of Appeals for the Ninth Circuit General Order 4.1.a.[4] The issues raised by Valensia in his supplemental briefs have now been resolved by the Supreme Court and other panels of this court with a higher priority than ours.

---

4. General Order 4.1a. provides in pertinent part: "The panel which first takes the issue under submission has priority. All other panels before which the issue is pending that know of another panel's priority shall enter an order vacating or deferring submission pending a decision by the first panel."

### A.

Valensia contends that the penalty enhancement provisions set forth in the subsections of § 841 are unconstitutional because they set forth separate crimes. We rejected this contention in our en banc decision in *United States v. Buckland,* 289 F.3d 558 (9th Cir.) (en banc), *cert. denied,* ——— U.S. ———, 122 S.Ct. 2314, 152 L.Ed.2d 1067 (2002). We stated in *Buckland:* "The Tenth Circuit correctly noted that '*Apprendi* ... does not hold that legislatures can no longer have separate statutory provisions ... governing a substantive offense and sentencing factors as is the case in § 841.'" *Id.* at 565.[5] We also concluded in *Buckland* that, in enacting § 841, Congress intended "to ramp up the punishment for controlled substance offenders based on the type and amount of illegal substance involved in the crime." *Id.* at 568. *Buckland* also provides that drug quantity "must be charged in the indictment, submitted to the jury, subject to the rules of evidence, and proved beyond a reasonable doubt." *Id.* Applying the plain error standard of review, we held that, "any error in determining Buckland's 324 month sentence was harmless." *Id.* at 572.

Based on *Buckland,* we must reject Valensia's contention that the sentencing provisions of § 841 create separate crimes. We agree with his claim, however, that the indictment violated due process because it failed to allege the quantity of the controlled substance.

---

5. In *United States v. Cotton,* ——— U.S. ———, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002), the Court instructed that "[i]n providing for *graduated penalties* in 21 U.S.C. § 841(b), Congress intended that defendants, like respondents, involved in large-scale drug operations receive more severe punishment than those committing drug offenses involving lesser quantities." *Id.* at 1787. (emphasis added).

## B.

 Valensia's contention, that a district court lacks subject matter jurisdiction when the court imposes a sentence in excess of 20 years, if the indictment fails to allege the quantity of the controlled substance, was rejected by the Supreme Court on May 20, 2002 in *United States v. Cotton,* —— U.S. ——, 122 S.Ct. 1781, 152 L.Ed.2d 860. In *Cotton,* as here, the defendant did not object in the district court that the sentencing decision was based on a drug quantity not alleged in the indictment. *Id.* at 1783. The Court held in *Cotton* that "defects in an indictment do not deprive a court of its power to adjudicate a case." *Id.* at 1785. Applying the plain error rule, the Court held that the omission of the drug quantity from the indictment "did not seriously affect the fairness, integrity, or public reputation of judicial proceedings" because "[t]he evidence that the conspiracy involved at least 50 grams of cocaine base was 'overwhelming' and 'essentially uncontroverted.'" *Id.* at 1786.

## C.

The district court did not inform Valensia during the plea colloquy that if the matter went to trial, the Government would be required to persuade the trier of fact that the quantity of the controlled substance exceeded 50 grams in order to authorize the court to impose a sentence in excess of 20 years. Valensia contends that the court erred during the plea proceedings by failing to obtain an admission from Valensia regarding the quantity of methamphetamine involved in his criminal activities as part of the factual basis for his plea of guilty.

In an opinion filed on June 17, 2002, we held in *United States v. Minore,* 292 F.3d 1109 (9th Cir.2002) that,

> where drug quantity exposes the defendant to a higher statutory maximum sentence than he would otherwise receive, it is the functional equivalent of a critical element within the meaning of *Henderson.* Rule 11(c)(1) and due process require the district court to advise the defendant of each critical element of the offense. Accordingly, the district court must advise the defendant that the government would have to prove drug quantity as it would prove any element—to the jury beyond a reasonable doubt.

*Id.* at 1117. The defendant in *Minore* failed to raise this issue before the district court. *Id.* For that reason, we applied the plain error standard of review. *Id.* Here, the district court failed to advise Valensia that a quantity of methamphetamine in excess of 50 grams would expose him to a greater punishment. This admonition is necessary to ensure that a defendant understands "the nature of the charge to which the plea is offered, . . . and the maximum possible penalty provided by law . . . ." Fed.R.Crim.P. 11(c)(1). In short, Valensia was not warned during the plea proceedings that the district court could increase the punishment depending upon the quantity of the controlled substance, nor did he admit that the drug offense to which he pleaded guilty involved a quantity in excess of 50 grams.

## D.

In announcing its sentence, the district court stated: "In this sentencing proceeding, we, I think, all agree that as to disputes for which there is evidentiary contest, that a preponderance of the evidence is the standard that is to be utilized." The court then noted that there was no dispute that the total amount seized was greater than 50 grams. Valensia did not object to the district court's use of the preponderance of the evidence standard regarding disputed facts, or its conclusion that the

quantity of methamphetamine seized was greater than 50 grams.

In discussing the applicable standard of persuasion, the district court faithfully complied with the prevailing law of this circuit. *See, e.g., United States v. Harrison–Philpot,* 978 F.2d 1520, 1523 (9th Cir.1992) (holding that a district court should apply the preponderance of the evidence standard to determine the amount of controlled substances involved in a conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1)-(b)(1)(C)); *United States v. Sotelo–Rivera,* 931 F.2d 1317, 1319 (9th Cir.1991) (stating that "Section 841(a) does not specify drug quantity as an element of the substantive offense of possession with intent to distribute; quantity is instead relevant to the penalty provisions of section 841(b), and is a matter for the district court at sentencing.").

In *Apprendi,* the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348. Thus, where a defendant enters a guilty plea, the district court must establish as part of the factual basis for the plea that the quantity of the controlled substance involved exceeded the minimum amount proscribed by the statute before it is authorized to prescribe a sentence in excess of the maximum punishment for an unspecified amount of a controlled substance. Where, as here, the defendant fails to object to the district court's establishing that amount and its use of the preponderance of the evidence standard in determining the quantity of a controlled substance, we review for plain error. *Buckland,* 289 F.3d at 563.

## IV

Because of changes in the law based on the Supreme Court's decision in *Apprendi* and its progeny that followed the indictment, the entry of Valensia's guilty plea, and the sentencing proceedings in this matter, we conclude that the indictment was defective, and that the plea colloquy violated Rule 11(c)(1) and (f), in failing to establish the quantity of the controlled substance involved as part of the factual basis for the plea. Because Valensia did not object on these grounds in the district court, we must apply the plain error test to each of Valensia's forfeited claims in this direct appeal. Under the plain error standard of review, we will affirm if the error did not prejudice the defendant's substantial rights by affecting the outcome of the proceedings. *Buckland,* 289 F.3d at 563, citing *United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

The undisputed evidence presented in the PSR demonstrated that the amount of methamphetamine involved in Valensia's conspiracy exceeded 50 grams, thereby exposing him to a maximum punishment of life imprisonment. Furthermore, Valensia's counsel conceded during the sentencing proceedings that "at the very best I could possibly prove that there were more than 5, but less than 15 kilos" of methamphetamine.

We are persuaded that, (1) the failure of the Government to allege the quantity of methamphetamine in the indictment, (2) the failure of the district court to inform Valensia during the plea colloquy that, if the matter went to trial, the Government would have to persuade the trier of fact that it must determine beyond a reasonable doubt whether the quantity exceeded 50 grams, and (3) the failure of the district court to establish the quantity of methamphetamine as part of

the factual basis for the plea, did not seriously affect the fairness, integrity, or public reputation of the judicial proceedings because the evidence that the conspiracy involved at least 50 grams of methamphetamine was overwhelming and uncontroverted. *See Cotton,* 122 S.Ct. at 1786.

AFFIRMED.